307

STATE OF MAINE
*vs.*
THOMAS A. CORMIER.

Aroostook.   Opinion, August 27, 1945.

*George V. Blanchard,*
*James P. Archibald,* County Attorney, for the State.
*Ralph K. Wood,*

*Jasper H. Hone,*

*Scott Brown,* for the respondent.

Sitting: Sturgis, C. J., Thaxter, Hudson, Manser, Murchie, Chapman, JJ.

Manser, J. Complaint for operation of a motor vehicle while under the influence of intoxicating liquor. The case comes up on exceptions to the overruling of a demurrer. Counsel for the State and the respondent agree that the sole question is whether the complaint sets forth any violation of law, inasmuch as it is not charged that the vehicle was operated upon a public way or in a public place, and that in fact the place described was a private driveway.

The statute, R. S. 1930, c.29, §88 (now R. S. 1944, c.19, §121), under which the complaint was drawn, and which has not been amended with regard to the particular point involved, reads as follows:

> "Whoever shall operate or attempt to operate a motor vehicle upon any way, or in any other place when intoxicated or at all under the influence of intoxicating liquor or drugs, . . . upon conviction, shall be punished . . ."

The history of this law is of value in interpretation of the provision as it now stands. When first enacted, it appeared in P. L. of 1911, c.162, §20, and then read:

> "Any persons operating a motor vehicle upon any way recklessly or while under the influence of intoxicating liquor so that the lives or safety of the public are in danger, . . . shall be punished by a fine not exceeding fifty dollars, or by imprisonment for a term of three months, or by both such fine and imprisonment."

In this act, in §1, appears for the first time a definition as to the scope of the term "motor vehicle" and as to the application of the various provisions of the statute with respect to the place of operation. It reads:

> "The term 'motor vehicle,' as used in this act shall include all vehicles self-propelled on the highway, townway, public streets, avenues, driveway, park or parkway, by motive power of whatsoever kind, namely, automobiles, . . ."

These two sections are found in the Revised Statutes of 1916, c.26, §§ 15 and 38, to precisely the same effect. No substantial change was made thereto until the codification by P. L. 1921, c.211. In this act appears a revised definition of terms. In §1, we find:

> "As used in this chapter, unless the context otherwise indicates, the word 'way' includes all kinds of public ways; . . . and words in the context of this act indicating operation or use of a vehicle refer to its operation or use upon any way or bridge in this state, including public parks and parkways."

In this codification the offense of reckless driving and that of operating a motor vehicle while under the influence of intoxicating liquor were separated into two sections. §72 provided:

> "Whoever operates a motor vehicle upon any way recklessly, so that lives or safety of the public are in danger, . . . shall be punished by a fine of not more than fifty dollars, or by imprisonment for a term not exceeding three months or by both fine and imprisonment."

§74 provided:

> "No person shall operate or attempt to operate a motor vehicle when intoxicated or at all under the influence of intoxicating liquor or drugs. Whoever violates the foregoing provision shall be punished upon conviction by a fine of not less than one hundred dollars nor more than one thousand dollars or by imprisonment for not less than thirty days nor more than one year, or by both fine and imprisonment."

Thus is demonstrated the developing consciousness of the greater menace of drunken driving as compared with reckless driving, and the intended deterrent effect of legislation.

Four years later the Court in *State* v. *Conant,* 124 Me., 198, 126 A., 838, 839, considered an indictment based on said §74 of operation of a motor vehicle by the respondent while intoxicated. The indictment included no mention of any way or place except that it was in the city of Portland. The respondent demurred. The Court sustained the demurrer on the ground that the statute must be read in the light of the provision of §1 of the act, and held that the operation of a motor vehicle while the operator was intoxicated was declared to be a crime only when the act was committed upon a way or bridge, including public parks and parkways, and the Court said:

> "So tested the indictment fails. Clearly by its terms it may include an act which is not punishable; as, for example, the operation or attempt to operate a motor vehicle by an intoxicated man within his own dooryard or on a private driveway on his own premises. In neither case would the act be penal."

At the next session of the legislature, said §74 was repealed

(See c.211, P. L. 1925) and in place thereof a new paragraph was substituted, reading in pertinent part as follows:

> "No person shall operate or attempt to operate a motor vehicle upon or along any way, bridge, public park or parkway in this state, when intoxicated or at all under the influence of intoxicating liquor or drugs; and no person shall operate or attempt to operate a motor vehicle in any other place where the life or safety of any other person is endangered, when intoxicated. . . ."

In the new law it will be noted that words defined in §1, to wit, way, bridge, public park, or parkway, were incorporated and then was added language that had not appeared in any previous statute, whereby drunken driving was prohibited "in any other place where the life or safety of any other person is endangered." In the new section the legislature did not say, "in any other public place." It had stated the public places it had in mind and then added, "or in any other place."

It would appear that the decision in the *Conant* case, then so recently promulgated, was in the minds of the legislators, and that the change was made for the very purpose of affording protection to the lives and safety of the men, women, and children of this State wherever they might be, whether on public or private ways or at any other place where drunken driving would constitute a menace. It was conscious of the fact so well stated in *State* v. *Taylor*, 131 Me., 438 on page 441, 163 A., 777 on page 778, that

> "The condition that makes a driver, under the influence of intoxicating liquor or drugs, a menace to the travelling public, is not only a lessening of his mental alertness, or an exhilaration thereof, but as well any weakening or slowing up of the action of his motor nerves, interference with the coordination of sensory

and motor nerves, which may cause sluggishness where quickness of action is demanded."

The legislature realized that every motor vehicle at best is inherently a machine of dangerous propensities whose operation should not be permitted to one even at all under the influence of intoxicating liquors at any place "where the life or safety of any other person is endangered."

Before the change of the law in 1925, the statute as construed in the *Conant* case permitted an operator, however drunk, to drive his motor vehicle with impunity except on public ways and bridges and in public parks or parkways. It is apparent, however, that the legislature appreciated that the menace was the same to people using private ways, driveways and any other places where motor vehicles might be operated. These people should be protected against the intoxicated driver of a motor vehicle. They should not lose the benefit of that protection the instant they step from the line of a public way into a private way or driveway. The legislature evidently intended to safeguard the rights of all persons who might be endangered without limitation to those on public ways or even confining the protection to places where the public had the right of access. The very purpose of operating a motor vehicle is to go somewhere. Even assuming that a man, realizing his condition, decided to drive his car into his own garage, yet the law, as we construe it, intended to protect his child or any other person who might be upon the driveway, even to the stranger within his gates. We are not dealing with the rights of litigants on the civil side of the court, but with a criminal statute.

It is common knowledge that, in this State, there are many private ways on lands privately owned. These do not constitute places to which the public has a right of access, but they are frequently used by pedestrians and drivers of motor vehicles.

Following the change of 1925, amendment was made by P. L. 1929, c.327, §17, both as to reckless driving and as to drunken driving, and as further revised, appear in R. S. 1930, c.29, §§ 86 and 88. As to reckless driving it provided:

"Whoever upon any way, or in any place to which the public has a right of access, operates any vehicle recklessly or in a manner so as to endanger any person or property shall be guilty of reckless driving";

The distinction in the revision as to drunken driving is apparent and we repeat here that section reads:

"Whoever shall operate or attempt to operate a motor vehicle upon any way, or in any other place when intoxicated or at all under the influence of intoxicating liquors or drugs, upon conviction, shall be punished . . ."

Eliminated entirely from requirement of proof in the statute under consideration, is the element of danger to lives or safety of others.

Evidently the intoxicated driver is to be regarded as one who should be denied wholly the right to operate a motor vehicle while in such condition. It recognizes the fact that every intoxicated driver is a menace and creates a potential danger, and it relieves the State from proving that actual danger existed at the time of arrest.

The statute relating to the operation of a car while intoxicated is not now affected by the definitions contained in §1 of the act. The language is complete and sufficient of itself and is in no way dependent or governed by the definitions given in §1 of the act.

*Exceptions overruled.*

CONCURRING IN RESULT

MURCHIE, J.   I concur in overruling the exceptions and in those declarations in the opinion which indicate that motor vehicles operated by intoxicated persons are hazardous on driveways and private ways as in public places and that the drunken driving law is not curtailed in its field of operation by definitions appearing elsewhere in the statutes. The complaint charges the respondent with "driving" his automobile "on a certain driveway" leading out of a public highway. Webster defines "driving" as "handling an automobile or other vehicle on the road" or "on a journey" and "driveway" has been held by this Court, approving the definition given in the Standard Dictionary, to be "a road for driving," designating an ownership which is private but not exclusive. *Young* v. *Braman,* 105 Me., 494 at 498, 75 A., 120 at 121. The allegations are sufficient to charge the respondent with going "somewhere," to quote a single word from the opinion of Mr. Justice Manser which seems to me to mark the bounds beyond which the drunken driving law was not intended to be effective.

This is distinguishable from driving a car from a dooryard into a garage within its limits and it is the construction of R. S. 1930, Chap. 29, Sec. 88, as amended, which declares such "driving" criminal, if done by one "realizing his condition" (whatever that may mean) , from which I feel constrained to dissent. It is based on contrasting the words "any other place" and "any other public place," without any indication that such a contrast was in the legislative mind. There is nothing in any legislative record or debate to suggest that it was and much of contrary effect in the changing phraseology of the statute from time to time.

The words "any other place" were not written into the law in 1929. They appeared first in P. L. 1925, Chap. 211, enacted after the decision in *State* v. *Conant,* 124 Me., 198, 126 A., 838, was handed down. The closing paragraph of the opinion with

its reference to a "dooryard" and a "private driveway" is quoted by Mr. Justice Manser. Earlier statement in it is that:

> "The operation of . . . a motor vehicle when the operator is intoxicated . . . is . . . a crime only when . . . committed upon a way or bridge, including public parks and parkways."

The offense charged was that the vehicle was operated "at * Portland" without specification that it was on any way either public or private. Assuming that the particular words were used to offset this decision, the qualification carried in the words "where the life or safety of any other person is endangered" discloses that it was the language quoted above rather than that dealing with dooryards against which they were aimed. The amended law covered travel routes and "other places" of the same type or species, i.e., where the presence of travelers might be anticipated. The principle of *ejusdem generis* was applied by express legislative language and not left for judicial construction. A legislative intention to extend the law to all places, public or otherwise, used frequently by pedestrians and vehicles is apparent but it is obvious that there was no intent to reach a man "within his own dooryard or on a private driveway on his own premises," to refer to the quotation from the *Conant* case made by Judge Manser. There "the life or safety of any other person" would not be endangered.

P. L. 1925, Chap. 124 makes a procedural change in the reckless driving law identical with that effected in the drunken driving law by Chap. 211 aforesaid. The Legislative Record shows that the two acts were companion pieces when introduced in the Senate on January 27, 1925 and proposed no changes other than that induced in both instances by the decisions rendered in *State* v. *Vashon*, 123 Me., 412, 123 A., 511,

and *State* v. *Mathon*, 123 Me., 566, 123 A., 824. Senate Document No. 28. The enumeration of places where drunken driving was prohibited appeared in a new draft reported by the committee on March 27, 1925. Senate Document No. 281. As finally enacted the law made the state of intoxication the sole test of the crime when a vehicle was operated in named places but imposed the requirement of danger to the life or safety of some other person if in "any other place."

The 1929 law put an end to that distinction. Since the effective date of P. L. 1929, Chap. 327, drunken driving has been punishable without either allegation or proof of danger to any other person if committed anywhere falling within the descriptive words "upon any way, or in any other place." The 1929 Legislature had 3 acts presented to it proposing some change in the drunken driving law. See House Documents Nos. 511 and 831 and Senate Documents 284, 399 and 429. The second House Document was a new draft of the first and became P. L. 1929, Chap. 327, Sec. 17, with a paragraph repealing P. L. 1921, Chap. 211, Sec. 64. Senate Document No. 284 was not enacted. Senate Documents 399 and 429 are respectively a new draft of "An Act to Provide an Uniform Motor Vehicle Code," originally introduced at the legislative session of 1927 and then referred to the 1929 Legislature, and a Senate Amendment thereto striking out everything after the enacting clause and substituting a complete new bill. The title of this new bill, P. L. 1929, Chap. 327, was changed in Senate Document No. 399 to read "An Act Relating to the Use and Operation of Motor Vehicles on the Highways."

Senate Documents Nos. 511 and 831 were entitled "An Act Relating to Licensing Operators of Motor Vehicles After Their Conviction of Operating the Same While Under the Influence of Intoxicating Liquors." The former proposed a change in P. L. 1921, Chap. 211 comparable to that which the latter accomplished by rewriting Sections 72 and 74 thereof and repeal-

ing Section 73. There was neither fanfare nor discussion about condensing the language defining the offense from 75 words in the first paragraph and 74 in the second to a mere and uniform 31 in each. No new word was called into play. I quote the language of the essential part of the first paragraph of the 1925 act emphasizing the 8 words retained, to designate the coverage of the legislation, that the mechanics of the change may be apparent:

> "*upon* or along *any way,* bridge, public park *or* parkway in this state, when intoxicated or at all under the influence of intoxicating liquor or drugs; and no person shall operate or attempt to operate a motor vehicle *in any other place* where the life or safety of any other person is endangered."

The historical review of pertinent legisation made by Judge Manser is incomplete and seems inaccurate in some respects. Motor vehicle regulatory legislation dates back to P. L. 1903, Chap. 237 although the first reference to either reckless driving or drunken driving appears in the 1911 law which he cites. The 1903 act, *supra,* P. L. 1905, Chap. 147, the 1911 codification and enlargement of regulation and P. L. 1915, Chap. 207 enumerated several classes of travel thoroughfares including "driveways" in numerous sections. See R. S. 1916 where all this legislation was incorporated into Chapter 26 containing our "Law of the Road," indicating legislative intention that it was for the protection of travelers upon our highways, Sections 15, 16, 18, 19 and 28. In other instances the reference was to "ways" or "highways" only, Sections 20, 36 and 38, to "streets or ways" or to "roads and highways," Sections 21, 32 and 37, yet it would be difficult to support a claim that the Legislature intended its severally described places of application to be different from each other.

The separation of the offenses of reckless driving and drunken driving did not occur in 1921 as Judge Manser states. The separation appears in P. L. 1919, Chap. 211, Secs. 12 and 14. It made reckless driving an offense "upon any way" and applied drunken driving to "any highway, townway, public street, avenue, driveway, park or parkway," using the identical enumeration of travel thoroughfares contained in so many sections of the statute containing the "Law of the Road," *supra.* The "developing consciousness of the greater menace of drunken driving," apparent in imposing a more severe penalty therefor than that applicable to reckless driving dates back to 1919. The 1921 law did not increase the penalty. A second offense of either was given felony status in P. L. 1911, Chap. 162. The 1919 law gave that status to the first drunken driving offense. The 1923 Legislature was more impressed with the gravity of reckless driving and increased the money penalty for both first and subsequent offenses. See P. L. 1923, Chap. 14.

The entire history of our legislative regulation of motor vehicles and motor vehicle operation discloses an intent to safeguard travelers on our highways. This is apparent even in that part of P. L. 1929, Chap. 327, Sec. 17 which amended Section 74 of the 1921 act. A part of the penalty for drunken driving is revocation of the license to operate a motor vehicle and express declaration of the closing paragraph of the section as then amended and as it now appears is that the secretary of state may issue a new license after a measured waiting period upon "his determination that public safety will not be endangered." It seems apparent that the 1929 legislation was intended to eliminate the requirement as to pleading and proof that the 1925 law imposed when the operation involved was not upon a "way" and that there was no intention to enlarge the coverage of the law. Apparently all my colleagues except Mr. Justice Chapman construed the law as I do now when *State* v. *Peterson*, 136 Me., 165, 4 A., (2d), 835 was decided

in 1939. The pertinent part of the law was worded then as now, yet it was declared of a complaint alleging operation "on Route 3 in Gray" that if

> "purpose was to say that ... the operator ran his machine in some place other than on a public way, declaratory words vary greatly in color and content from saying so."

If the words "in any other place" are so inclusive as to apply to the dooryard of an operator it would seem unnecessary that declaratory words be meticulous.

A construction of the statute which gives the words "any other place" the broadest possible signification seems to violate both the principle that penal statutes should be strictly construed and that of *ejusdem generis* which was so plainly applicable to the legislation wherein the phrase was first used. The ways, bridges, public parks and parkways covered by the first and second paragraphs of P. L. 1925, Chap. 211 might have been described within the framework of the decision in *State* v. *Conant,* supra, by using the single word "way" since all are public ways. Their common characteristic is that they are used for travel on foot and in vehicles. That common characteristic is applicable as well to roads and driveways on land privately owned but available for public use and these were undoubtedly covered by the 1925 act. The "way" of the 1929 act included bridges, parks and parkways and it seems to strain construction to say that the words "other places" changed their meaning because the preceding matter was covered by a generic term. I would overrule the exceptions without construing the statute as applicable to a dooryard, a potato field or any private place or area not available for use in going somewhere. In 1929 as in 1925 the Legislature used pending legislation proposing identical procedural and penalty changes in the reckless driving and drunken driving laws to rewrite

the definition of drunken driving without any public hearing. I cannot believe our legislators intended such a departure from the consistent policy of more than 20 years as to extend regulation from travel routes to dooryards without giving the interested public an opportunity to be heard. The 1925 law rewrote that of 1921 to specify with exactness what was intended by the words of absolute prohibition used at that time. The 1929 amendment rewrote that of 1925 but carries no clear indication that it was intended to do more than change the features of pleading and punishment.