David ALLEN

v.

Rodney S. QUINN and John Cole.[1]

Supreme Judicial Court of Maine.

Argued April 21, 1983.
Decided April 29, 1983.

Marden, Dubord, Bernier & Chandler, Bruce W. Chandler (orally), Waterville, for plaintiff.

James E. Tierney, Atty. Gen., Paul F. Macri, Asst. Atty. Gen. (orally), Augusta, for Rodney S. Quinn.

Sewall, Mittel & Hefferan, Michael P. Asen (orally), Robert Edmond Mittel, Portland, for John Cole.

Before McKUSICK, C.J., and GODFREY, NICHOLS, CARTER, VIOLETTE and WATHEN, JJ., and DUFRESNE, A.R.J.

McKUSICK, Chief Justice.

By adding the direct initiative[2] and referendum[3] provisions to the Maine Constitution in 1909, the people took back to themselves part of the legislative power that in 1820 they had delegated entirely to the legislature.[4] In this appeal we are faced with a question as to the nature of

1. The Superior Court permitted Save Maine's Only Official State Animal ("SMOOSA"), an unincorporated association, to intervene as a defendant in this case. We have, however, removed SMOOSA from the caption of this appeal, and we reiterate that "absent specific statutory authorization, an unincorporated association has no capacity to sue or be sued in its own name." *Gulick v. Board of Environ-* *mental Protection,* 452 A.2d 1202, 1202 n. 1 (Me.1982).

2. Me. Const. art. IV, pt. 3, § 18.

3. *Id.,* § 17 (now termed the "people's veto" in the title of section 17 and in the text of section 22).

4. Me. Const. art. IV, pt. 1, § 1 (1820).

the time limit the people have put upon thier own exercise of the initiative: Under article IV, part 3, section 18(1) of the Maine Constitution,[5] may a petition starting the initiative process be filed with the Secretary of State *only* during the first 50 days after the legislature convenes in its first regular session of the biennium (or the first 25 days after it convenes in its second regular session)? We answer that question in the negative. Although the constitution expressly imposes a deadline date by which an initiative petition must be filed, it does not, either expressly or by necessary implication, bar the early filing of an initiative petition even though the legislature to which it is addressed is yet to convene.

We affirm the judgment of the Superior Court, which also construed the direct initiative provision of the constitution to permit an initiative petition to be effectively filed with the Secretary of State prior to the convening date of a regular session of the legislature.

This case arose from an initiative petition drive seeking to repeal the 1981 legislative enactment that authorized moose hunting seasons, 12 M.R.S.A. § 7463–A (1981). An unincorporated association of individuals (including John Cole of Brunswick) using the name SMOOSA ("Save Maine's Only Official State Animal") circulated the petitions. Between October 25 and November 1, 1982, SMOOSA physically delivered to the office of the Secretary of State petitions later determined to contain a total of 39,942 valid signatures of Maine voters. The petitions were directed to the 111th Legislature, the first regular session of which, pursuant to Me. Const. art. IV, pt. 3, § 1, convened on December 1, 1982. The 1982 gubernatorial election was held on November 2, 1982, the next preceding gubernatorial election having been held in November, 1978.

On February 14, 1983, Secretary of State Rodney S. Quinn, acting through his deputy and in performance of his duties under 21 M.R.S.A. § 1355(1) (Pamph. 1982–1983), issued a written decision that the SMOOSA initiative petition[6] was valid. In making this decision the Secretary of State treated the petition as having been filed on November 1, 1982; and he certified that it satisfied all of the constitutional requirements, including the requirement that it contain valid signatures in a number in excess of "ten percent of the total vote for Governor cast in the last gubernatorial election pre-

5. The direct initiative provision of the Maine Constitution, art. IV, pt. 3, § 18, reads in significant part as follows:

**1. Petition procedure.** The electors may propose to the Legislature for its consideration any bill, resolve or resolution, including bills to amend or repeal emergency legislation but not an amendment of the State Constitution, by written petition addressed to the Legislature or to either branch thereof and filed in the office of the Secretary of State by the hour of five o'clock, p.m., on or before the fiftieth day after the date of convening of the Legislature in first regular session or on or before the twenty-fifth day after the date of convening of the Legislature in second regular session....

**2. Referral to electors unless enacted by the Legislature without change.** For any measure thus proposed by electors, the number of signatures shall not be less than ten percent of the total vote for Governor cast in the last gubernatorial election preceding the filing of such petition. The date each signature was made shall be written next to the signature on the petition, and no signature older than one year from the written date on the petition shall be valid. The measure thus proposed, unless enacted without change by the Legislature at the session at which it is presented, shall be submitted to the electors together with any amended form, substitute, or recommendation of the Legislature, and in such manner that the people can choose between the competing measures or reject both....

**3. Timing of elections.** The Governor shall, by proclamation, order any measure proposed to the Legislature as herein provided, and not enacted by the Legislature without change, referred to the people at an election to be held in November of the year in which the petition is filed....

6. The numerous identical petitions that were circulated and filed have for all practical purposes been treated as a single petition and will be so treated in this opinion for purposes of our constitutional analysis.

ceding the filing of such petition,"[7] that minimum number being 37,026 based upon the 1978 vote.

Thereupon, David Allen, a Maine voter who opposes the repeal of the moose hunting law,[8] took a timely appeal from the Secretary of State's decision to the Superior Court (Kennebec County). He contended that under the applicable constitutional provisions the SMOOSA petition could not be considered filed earlier than the first day of the legislative session to which it was directed—in this case, December 1, 1982—and that to be valid in initiating a popular vote on the repeal of the moose hunting law, the SMOOSA petition must therefore contain signatures equal to or greater than ten percent of the vote cast in the gubernatorial election held on November 2, 1982, that minimum being 46,030. The Superior Court permitted John Cole and SMOOSA[9] to intervene as defendants. After receiving the parties' stipulation of facts and after hearing oral argument the Superior Court on March 30, 1983, issued its opinion and order denying plaintiff Allen's appeal. Two days later plaintiff appealed to the Law Court, which, out of respect for the expeditious judicial review contemplated by the constitution, art. IV, pt. 3, § 22, set the appeal for briefing and oral argument on a much foreshortened time schedule.

Resolution of the controversy over the validity of the SMOOSA initiative petition depends exclusively upon a determination of the meaning of the controlling constitutional language. Although the constitution (art. IV, pt. 3, § 22)[10] contemplates that the legislature will enact laws to implement the direct initiative, any such laws, of course, must be consistent with the constitutional provision setting up the direct initiative, *i.e.*, section 18; until the legislature does enact laws not inconsistent with section 18, the constitutional provisions are expressly declared to be self-executing.[11]

In interpreting our State Constitution, "we look primarily to the language used." *Farris ex rel. Dorsky v. Goss,* 143 Me. 227, 230, 60 A.2d 908, 910 (1948). As the New York Court of Appeals well stated in *Kuhn v. Curran,* 294 N.Y. 207, 217, 61 N.E.2d 513, 517–18 (1945):

> It is the approval of the People of the State which gives force to a provision of the Constitution . . . and in construing the Constitution we seek the meaning which the words would convey to an intelligent, careful voter.

The critical language of section 18(1) is that which requires an initiative petition to be "filed in the office of the Secretary of State . . . on or before the fiftieth day after the date of convening of the Legislature in first

---

**7.** Me. Const. art. IV, pt. 3, § 18(2).

**8.** 21 M.R.S.A.. § 1355(2) expressly authorizes any voter to appeal the Secretary of State's decision within five days. *See McCaffrey v. Gartley,* 377 A.2d 1367 (Me.1977).

**9.** *See* note 1 above.

**10.** Article IV, pt. 3, § 22 of the Maine Constitution reads as follows:

> Until the Legislature shall enact further laws not inconsistent with the Constitution for applying the people's veto and direct initiative, the election officers and other officials shall be governed by the provisions of this Constitution and of the general law, supplemented by such reasonable action as may be necessary to render the preceding sections self executing. The Legislature may enact laws not inconsistent with the Constitution to establish procedures for determination of the validity of written petitions. Such laws

shall include provision for judicial review of any determination, to be completed within one hundred days from the date of filing of a written petition in the office of Secretary of State.

**11.** Arguments of counsel based upon asserted inconsistencies between the constitution and the implementing statute, 21 M.R.S.A. § 1355, thus get us nowhere in divining the meaning of the constitution. For example, the constitutional mandate that judicial review of the Secretary of State's decision of the validity of the initiative petition be completed within one hundred days from the date of its filing in the Secretary of State's office, *see* Me. Const. art. IV, pt. 3, § 22, means simply that the Secretary of State may not delay making his decision as long as the implementing statute purports to permit.

regular session." *See* note 5 above. Plainly, section 18(1) thereby sets a deadline beyond which a petition may not be effectively filed for consideration at that regular session. On the other hand, it is not at all clear from the quoted language that it prescribes any date before which a filing may not be made. The phrase "after the date of convening," combined with the rest of the quoted language, makes clear that calendar days, rather than legislative days, are the measuring units for setting the filing deadline.[12] We do not find persuasive plaintiff Allen's argument that the same phrase "after the date of convening" can be read to serve the additional purpose of limiting the filing of initiative petitions to the first 50 days after the regular session convenes. In the critical first sentence of section 18(1), there simply is no express provision that initiative petitions must be filed during the time the legislature is in regular session. Plaintiff Allen is left to trying to show that such a requirement is a necessary implication in order to avoid inconsistencies with other constitutional provisions or to carry out underlying public policy.

First, plaintiff Allen points out that section 18(2) provides that legislation proposed by an initiative petition shall be submitted to the electors "unless enacted without change by the Legislature at the session at which it is presented" and that SMOOSA directed its petition to the 111th Legislature, and not to the 110th, which was still in existence on November 1, 1982. That election by SMOOSA, he suggests, requires that SMOOSA be treated as if it had filed its petition at a time when the 111th Legislature was in existence; the earliest date on which that was the case was December 1, 1982. The answer to that argument lies in the fact that only a regular session of the legislature can be required to consider a measure proposed by an initiative petition. SMOOSA had no choice; its petition had to be directed to the legislature that was next to be in regular session. The nonexistence

of the 111th Legislature at the time of the SMOOSA filing had, as a practical operating matter, no effect whatever upon the Secretary of State's function in receiving the petition for filing and in promptly determining its validity—all in preparation for the upcoming regular session. One would expect that early filing is not a burden, but rather is a boon to the Secretary of State's office and later to the legislature in considering the proposed measure.

Second, plaintiff Allen points to the provision of section 18(3) that requires the Governor to order any initiative measure that is not enacted by the legislature without change to be "referred to the people at an election to be held in November of the year in which the petition is filed." With considerable force, plaintiff notes the absurdity or impossibility of referring the moose hunt repeal proposed by SMOOSA to the November election of the year (1982) in which the SMOOSA petition was filed. However, this absurdity or impossibility also exists with plaintiff's own construction of section 18(1), since even by his own construction the SMOOSA petition could have been filed at any time on or after December 1 in the year 1982. Section 18(3) in its present form was approved by the voters in 1980, subsequent to the 1978 constitutional amendment that set the date of convening of the first regular session at the first Wednesday of December following the general election. Compare Const.Res.1979, ch. 3, *passed in* 1980 with Const.Res.1977, ch. 4, *passed in* 1978, amending Me. Const. art. IV, pt. 3, § 1. Obviously, a problem exists in applying section 18(3), whatever is the correct construction of section 18(1). The existence of that problem with section 18(3) cannot be permitted to warp our construction of section 18(1). Rather, it should be the occasion for giving a sensible interpretation to section 18(3) that will carry out its quite obvious intent, regardless of its literal

---

**12.** If section 18(1) had used the simpler language "or or before the fiftieth day of the first regular session of the Legislature," it would have left a serious ambiguity whether calendar or legislative days were intended.

language.[13] *See New England Tel. & Tel. Co. v. Public Utilities Commission,* 376 A.2d 448, 453 (Me.1977).

In addition to seeking support for his position from implications in other provisions of section 18, plaintiff Allen asserts that policy considerations argue for restricting the time when initiative petitions may be filed. Public policy requires, he says, that the gubernatorial election used as the benchmark be as recent as possible in order that it be a better measure of current voter participation generally. While this consideration has some merit, it by no means compels the narrow construction of section 18(1) urged by plaintiff. As illustrated by the case at bar, permitting the filing of initiative petitions with the Secretary of State at any time extends the use of the 1978 election as the benchmark at most by only one year. Furthermore, there is no reason that the gubernatorial vote in one election must necessarily be greater than that at the next preceding election. On either the plaintiff's or the defendants' construction of section 18(1), the public policy concern that the initiative process be triggered only by petitions signed by a significant number of qualified voters will be adequately met.

The "legislative history" of section 18(1) seems to us to be inconclusive. Prior to 1975 initiative petitions could alternatively be "filed in the office of the Secretary of State or presented to either branch of the Legislature within forty-five days after the date of convening of the Legislature in regular session." 1949 Resolves, ch. 61. The "within" clause plainly limited the presentation of initiative petitions to the legislature to the time when it was in regular session. It is less clear whether that pre-1975 time restriction was intended also to apply to filings in the Secretary of State's office. In 1975 section 18(1) was amended to substitute the following language for that quoted above:

... filed in the office of the Secretary of State by the hour of five o'clock, p.m., on the fiftieth day after the date of convening of the Legislature in regular session.

Const.Res.1975, ch. 2, *passed in* 1975. Plainly, that amendment eliminated the option of presenting the initiative petitions directly to the legislature. At the same time, the abandonment of the "within" clause used previously in the time restriction plausibly supports a construction by which the amendment changed that time restriction to set only a final deadline for filing in the Secretary of State's office, rather than fixing a period within which petitions had to be filed. Obviously that is not, however, the only plausible reading of the 1975 amendment. In sum, the history of the evolution of the language of section 18(1) does not provide any clear answer to the question posed by the case at bar.

Two constructional precepts reinforce a conclusion that section 18(1) should not be read to impose a filing time limit on the front end. First, as Chief Justice Marshall instructed us, "We must never forget, that it is *a constitution* we are expounding." (Emphasis in original) *M'Culloch v. Maryland,* 17 U.S. (4 Wheat.) 316, 407, 4 L.Ed. 579 (1819). Constitutional provisions are accorded a liberal interpretation in order to carry out their broad purpose, because they are expected to last over time and are cumbersome to amend. *See Rathjen v. Reorganized School District,* 365 Mo. 518, 530, 284 S.W.2d 516, 524 (1955). *But see* Williams, *State Constitutional Law Processes,* 24 Wm. & Mary L.Rev. 169, 198–99 (1983) (state constitutions more easily amendable than the federal constitution). The broad purpose of the direct initiative is the encouragement of participatory democracy. By section 18 "the people, as sovereign, have retaken unto themselves legislative power," and that constitutional provision must be liberally construed to facilitate, rather than to handicap, the people's exercise of their

---

**13.** The overall intent of section 18(3) is clear; any required popular vote on an initiative measure should be held at the November elec-tion coming next after the adjournment of the regular session to which it was presented.

sovereign power to legislate. *Opinion of the Justices,* 275 A.2d 800, 803 (Me.1971). *See also Kelly v. Curtis,* 287 A.2d 426, 428 (Me.1972).

In the second place, the people in retaking to themselves part of the legislative power have laid out in unusual detail the procedure by which they will legislate by direct vote. Indeed, section 18 is detailed enough to be self-executing. *See* Me. Const. art. IV, pt. 3, § 22. That detail even extends, for example, to prescribing five o'clock p.m. as the hour of the filing deadline for initiative petitions. *See* note 5 above. In the midst of this specificity, with one time limitation on filing clearly defined, a court must be chary of reading another time limitation into section 18(1) by implication. *See* 16 Am.Jur.2d *Constitutional Law* § 108 (1979). *Cf. Myers v. United States,* 272 U.S. 52, 118, 47 S.Ct. 21, 25, 71 L.Ed. 160 (1926) (the constitutional words being construed "were limitations upon the general grant of the executive power, and as such, being limitations, should not be enlarged beyond the words used"). Since the people in the direct initiative amendment have expressly detailed the procedure required to be followed, a court should infer additional procedural requirements only if they are clearly necessary to achieve consistency with other constitutional provisions or to accomplish the general purpose of the direct initiative. No such clear necessity exists that would justify limiting the time for filing initiative petitions beyond the express deadline of section 18(1).

We hold that an initiative petition may be validly filed in the Secretary of State's office prior to the convening of the regular session of the legislature to which it is addressed.

The entry is:

Judgment affirmed.

GODFREY, NICHOLS, CARTER, VIOLETTE and WATHEN, JJ., concurring.

DUFRESNE, A.R.J., dissenting.

With due respect, I must dissent from the constitutional construction given by the majority opinion to Article IV, Part Third, Section 18 of the Constitution of Maine. That article, as relevant to the instant direct initiative of legislation, provides as amended in pertinent part as follows:

Section 18. *Direct initiative of legislation.*

1. *Petition procedure.* The electors may propose to the Legislature for its consideration any bill, resolve or resolution, including bills to amend or repeal emergency legislation but not an amendment of the State Constitution, by written petition addressed to the Legislature or to either branch thereof and filed in the office of the Secretary of State by the hour of five o'clock, p.m., on or before the fiftieth day after the date of convening of the Legislature in first regular session . . . .

2. *Referral to electors unless enacted by the Legislature without change.* Any measure thus proposed by electors, the number of which shall not be less than ten percent of the total vote for Governor cast in the last gubernatorial election preceding the filing of such petition, unless enacted without change by the Legislature at the session at which it is presented, shall be submitted to the electors together with any amended form, substitute, or recommendation of the Legislature, and in such manner that the people can choose between the competing measures or reject both . . . .

The issue presented in this case is whether the total vote cast for Governor at the 1982 gubernatorial general election must be used to determine the number of required valid signatures entitling the proposed direct initiative of legislation to be submitted to the people, in which case the intervenor-appellee's attempt at having the moose hunting season legislation repealed would be aborted for insufficient numbers of valid signatures to the initiative petitions, or whether the total vote cast for Governor at the 1978

gubernatorial election is the controlling figure. If, in applying the constitutional mandate, we must look to the 1978 gubernatorial election voting totals, then the sponsors of the initiative would have submitted a sufficient number of valid signatures to force submission of the proposed legislation to the vote of the people and the plaintiff-opponent's appeal would be frustrated.

The key to the problem, however, depends on the meaning to be given to the two interrelated constitutional provisions: 1) the electors may propose to the Legislature for its consideration any bill, resolve or resolution, ... by written petition *addressed to the Legislature* or to either branch thereof *and filed in the office of the Secretary of State* by the hour of five o'clock, p.m., *on or before the fiftieth day after the date of convening of the Legislature in first regular session;* and 2) any measure thus proposed by electors, the number of which shall not be less than ten percent of the *total vote for Governor cast in the last gubernatorial election preceding the filing of such petition,* ... shall be submitted to the electors. The plaintiff-opponent contends that the filing of the petition as contemplated by the constitutional provisions means that the several petitions containing the bill, resolve or resolution proposed by the people, with the aggregate number of solicited signatures of electors, and constituting the "written petition," must be addressed to, and filed with, the Legislature in the office of the Secretary of State during its first regular session and not later than five o'clock, p.m., of the fiftieth day after the date of its convening. He argues that, even though petitions may be deposited with the Secretary of State prior to the actual convening of an incoming Legislature, there is no official filing within the meaning of the constitutional provisions prior to the date of the convening of the Legislature. With this, I agree.

It is obvious that the constitutional language in the area which concerns us on this occasion is ambiguous. And, as a general rule, the usual principles governing the construction of statutes apply also to the con-

struction of constitutions. *Farris ex rel. Dorsky v. Goss,* 143 Me. 227, 230, 60 A.2d 908, 910 (1948). True, we look primarily to the language used which in cases of doubt may be illumined by the surrounding circumstances. Id. at 230, 60 A.2d 908. Also, I agree that constitutional provisions should receive such a liberal and practical construction as will permit the purpose of the people expressed therein to be carried out, if such a construction is reasonably possible. *Wakem v. Inhabitants of Town of Van Buren,* 137 Me. 127, 132, 15 A.2d 873, 876 (1940).

The several constitutional provisions relating to the direct initiative must be examined as one comprehensive chart in any analysis geared to reaching the true meaning of each particular part thereof. A clause of doubtful import in itself may be made plain by comparison with some of the other clauses. The true sense of one clause may be found through the obvious meaning of another. In other words, one part may qualify another so as to restrict its operation otherwise than the natural construction would require if it stood alone. *Cooley's Constitutional Limitations* (8th Ed.) 124, et seq.; *John S. Westervelt's Sons v. Regency, Inc.,* 3 N.J. 472, 70 A.2d 767, 771 (1950).

As in the case of construction of statutes, the history of a particular constitutional amendment may be of great value in the interpretation of that amendment as finally proclaimed. *See Rines v. Scott,* 432 A.2d 767, 768 (Me.1981); *State v. Cormier,* 141 Me. 307, 308, 43 A.2d 819, 820 (1945).

The original direct initiative became effective on January 1, 1909, as an amendment to the Constitution of Maine following the adoption by the people of Article XXXI of the Constitution of this State. By the amendment the people reserved to themselves power to propose laws and to enact or reject the same at the polls independent of the legislature (*Farris ex rel. Dorsky v. Goss, supra,* at 230 of 143 Me., at 910 of 60 A.2d), but the written petition to be used in the exercise of such power had to be filed in

the office of the secretary of state or presented to either branch of the legislature at least thirty days before the close of its session. This language contemplated that both the filing with the secretary of state or the presentment to either branch of the legislature would be made during the session of the legislature, except that it had to be completed at least thirty days before the close of the session. Such provision left the final deadline to file or present such petition in an uncertain time frame. Nevertheless, this dubious deadline for filing or presentment of the written direct initiative petition stood intact for over 40 years, before it was changed through the submission to the people in 1949 of Article LXVI as an amendment to the Constitution of Maine providing that such written petition addressed to the legislature or to either branch thereof be filed in the office of the secretary of state or presented to either branch of the legislature *within 45 days after the date of convening of the legislature in regular session. See Resolves, State of Maine,* 1949, ch. 61. This amendment clarified the period within which both the filing of the petition with the secretary of state or its presentment to either branch of the legislature had to be done.

As it then stood, the constitution required that not less than twelve thousand electors propose direct initiative of legislation for the process to become operative. This, however, was changed some two years later, when the people adopted Article LXXI as an amendment to the Constitution of Maine. *See Resolves, State of Maine,* 1951, ch. 110. This amendment provided that "any measure thus proposed by electors, *the number of which shall not be less than ten per cent of the total vote for governor cast in the last gubernatorial election preceding the filing of such petition,"* shall be submitted to the electors, etc. We note that this amendment, by requiring the necessary number of proponents of direct initiative legislation to be determined by reference to the total vote for governor cast *in the last gubernatorial election preceding the filing of such petition,* must necessarily indicate a

unitary concept in the expression "preceding the filing of such petition." Filing of the petition in the office of the secretary of state or its presentment to either branch of the legislature had to be viewed as equivalent procedural steps to be taken within 45 days after the date of convening of the legislature in regular session. Otherwise, if the direct initiative of legislation written petition was presented directly to a branch of the legislature without actual filing with the secretary of state, then the constitution would not have provided the number of electors required for entitlement to the process, an unrealistic surmise. Thus, from its very beginning until 1975, the constitutional direct initiative of legislation process contemplated the filing of the written petition or its presentment to either branch of the legislature within forty-five days after the date of convening of the Legislature in regular session, in other words within a specific period of forty-five days beginning with the day the Legislature was convened in regular session and ending on the forty-fifth day thereafter.

In 1975, in an attempt to enlarge the filing period and provide at the same time an hourly deadline on the last day of filing, the people adopted a legislative resolve which became effective October 1, 1975 (*Constitutional Resolutions, State of Maine,* 1975, ch. 2) and which provided that the electors may propose such direct initiative of legislation by written petition addressed to the Legislature or to either branch thereof and filed in the office of the Secretary of State by the hour of five o'clock, p.m., *on* the fiftieth day after the date of convening of the Legislature in regular session. At the same time, the language of presentment to either branch of the Legislature was deleted. I do not view the latter change as significant. The fact that the constitutional clause already required that the written petition be addressed to the Legislature or either branch thereof, made the further directive that the written petition be presented to the Legislature or either branch thereof presumably duplicative and repeti-

tious terminology. *See Yoder v. Commonwealth,* 107 Va. 823, 57 S.E. 581, 584 (1907). This change, however, might have been interpreted as allowing the fiftieth day after the date of convening of the Legislature in regular session as the *only* day for the filing of the written petition in the office of the secretary of state.

This led to the adoption of the 1979 constitutional resolution (*Constitutional Resolution, State of Maine,* ch. 3) which did enlarge the original forty-five day period for filing the written petition to fifty days by making the following change in the language of the relevant provision by adding the underscored words:

> The electors may propose to the Legislature for its consideration any bill, resolve or resolution, including bills to amend or repeal emergency legislation but not an amendment of the State Constitution, by written petition addressed to the Legislature or to either branch thereof and filed in the office of the Secretary of State by the hour of five o'clock, p.m., on or before the fiftieth day after the date of convening of the Legislature in first regular session or on or before the twenty-fifth day after the date of convening of the Legislature in second regular session
> . . . .

This amendment became effective November 25, 1980. Where the constitutional change merely evinced an intention to provide a definite time period within which to file petitions of direct initiative of legislation, which had been in existence for years and which by inartistic drafting of a previous constitutional amendment seemed to have been eliminated, sound construction of the new constitutional amendment would require that it be construed to have intended no more than merely to put the organic law back on track. *See Griffin v. Vandegriff,* 205 Ga. 288, 53 S.E.2d 345, 349 (1949). An amendment should not be construed as effecting any greater innovation on the existing constitution than is reasonably necessary to accomplish the object of its adoption.

I would construe the meaning of the relevant constitutional provision as requiring the official filing in the office of the Secretary of State to be made between the date of the convening of the Legislature in first regular session and not later than five o'clock, p.m., on the fiftieth day thereafter. Hence, in the instant case, the total vote for Governor cast in the 1982 gubernatorial election was the controlling number of votes upon which the required ten percent of electors provided in the Constitution must be determined. There was error below and I would reverse the Superior Court judgment.