STATE OF MAINE
KENNEBEC, ss.

SUPERIOR COURT
CIVIL ACTION
Docket No. AP-23-07

WILLIAM H. DUNN, JR.,

  Petitioner,

 v.

SHENNA BELLOWS, in her official
capacity as Secretary of State for the
State of Maine,

  Respondent,

 and,

NO BLANK CHECKS BALLOT
QUESTION COMMITTEE,

  Intervenor.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

**DECISION AND ORDER**

## Introduction

Petitioner William H. Dunn, Jr. ("Petitioner") has filed an action pursuant to 21-A M.R.S. § 905(2) and M.R. Civ. P. 80C appealing Secretary of State Shenna Bellows' Determination of the Validity of a Petition for Initiated Legislation, dated January 26, 2023. In her decision, the Secretary of State ("the Secretary") found that the citizen initiative petition at issue—known as "An Act to Require Voter Approval of Certain Borrowing by Government-Controlled Entities and Utilities and to Provide Voters More Information Regarding that Borrowing" —was valid and supported by a sufficient number of valid signatures. More particularly, the Secretary found that the proponents of the initiative submitted 68,807 valid signatures, 1,125 above the 67,682 threshold.

AUGUSTA COURTS
MAR 7 '23 AM11:08

1

On appeal, Petitioner argues that the Secretary erroneously deemed at least 1,181 of those signatures to be valid, and when removed from the final signature count, a deficit of 56 signatures exists.[1] Among the errors alleged, Petitioner contends that the Secretary failed to comply with the statutory requirements governing circulator affidavits, as set forth in 21-A M.R.S. § 903-A(4). For relief, Petitioner asks the court to remand the matter to the Secretary for invalidation of the challenged signatures or to directly reverse the Secretary's decision.

By statute, the court is required to decide this appeal "before the 40th day after the decision of the Secretary of State." 21-A M.R.S. § 905(2). The court has reviewed the record as well as the briefing submitted by Petitioner, the Secretary, and Intervenor No Blank Checks Ballot Question Committee. Oral argument was held on March 3, 2023.

## Background

By way of some brief background,[2] William Ritch-Smith filed an Application for Citizen's Initiative with the Secretary on September 7, 2021. On December 7, 2021, the Secretary approved the form of the petition, and supporters of the initiative thereafter began collecting signatures. As part of that process, the individuals who solicited signatures for the petition—i.e., the circulators —prepared "circulator affidavits" to be submitted to the Secretary along with the other petition materials. Circulator affidavits must meet certain statutory requirements, including those described in 21-A M.R.S. § 903-A(4).

On December 27, 2022, the campaign submitted to the Secretary 28,238 petitions containing 93,837 signatures. The Secretary then proceeded to review the petitions over a period of 30 days. On January 26, 2023, the Secretary issued her Determination of the Validity of the Petition for Initiated Legislation. In her written Determination, the Secretary

---

[1] Petitioner originally challenged 1,184 signatures. This number changed after Petitioner acknowledged various signatures that were erroneously included in the challenged signature tally and identified additional signatures that were subject to challenge.

[2] Given the truncated timeframe for issuing a decision, the court dispenses with a lengthy factual and procedural background.

invalidated 25,030 signatures, 28 of which were deemed "invalid because the circulator did not file a circulator's affidavit at the time the petitions were filed with the Secretary of State or the affidavit was not properly completed." The Secretary nevertheless found 68,807 valid signatures, a total that exceeded the constitutional threshold by 1,125. *See* Me. Const. art IV, pt. 3, § 18(2). Accordingly, the Secretary found the petition to be valid. On February 6, 2023, Petitioner appealed the Secretary's decision pursuant to M.R. Civ. P. 80C and 21-A M.R.S. § 905(2).

## Standard of Review/Legal Framework

The court's discussion must begin with recognizing the various constitutional rights and principles implicated in this case. The Maine Constitution grants Maine people the right to legislate by direct initiative. Me. Const. art IV, pt. 3, § 18. The Law Court has stressed the importance of such a right, declaring "the right of the people to initiate and seek to enact legislation [to be] an absolute right." *McGee v. Sec'y of State*, 2006 ME 50, ¶ 21, 896 A.2d 933. "[A]lthough the Legislature has the authority to enact laws providing for the implementation of the initiative right, any legislative implementation must respect the substance of the constitutional right." *Id.* ¶ 20; Me. Const. art IV, pt. 3, § 22. The right cannot be abridged either directly or indirectly by governmental action. *McGee*, 2006 ME 50, ¶ 21, 896 A.2d 933. Accordingly, laws governing the direct initiative process "must be liberally construed to facilitate, rather than handicap, the people's exercise of their sovereign power to legislate." *Allen v. Quinn*, 459 A.2d 1098, 1102-03 (Me. 1983).

The Law Court has also recognized that "[t]he circulation of direct initiative petitions is 'core political speech,' and any state regulation of the initiative process must be 'narrowly tailored' to carry out a compelling state purpose." *Me. Taxpayers Action Network v. Sec'y of State*, 2002 ME 64, ¶ 8, 795 A.2d 75. Laws governing the initiative process should therefore be construed in a way that avoids imposing an impermissible burden on protected speech. *See id.*; *see also State v. Cropley*, 544 A.2d 302, 304 (Me. 1988).

3

Moreover, under the Maine Constitution, "[t]he Secretary of State is the constitutional officer entrusted with administering—and having expertise in—the laws pertaining to the direct initiative process." *Reed v. Sec'y of State*, 2020 ME 57, ¶ 18, 232 A.3d 202. The Secretary has been granted plenary power to investigate and determine the validity of petitions. *Me. Taxpayers Action Network*, 2002 ME 64, ¶ 12 n.8, 795 A.2d 75. When assessing the Secretary's determination of initiative petitions, the Court's review must be deferential and limited, keeping in mind the Secretary's "broad[] authority" in the context of evaluating referendum petitions. *Knutson v. Dep't of Sec'y of State*, 2008 ME 124, ¶ 20 n.7, 954 A.2d 1054; *Passadumkeag Mountain Friends v. Bd. of Envtl. Prot.*, 2014 ME 116, ¶ 12, 102 A.3d 1181.

By statute, an action seeking review of the Secretary's decision on a direct initiative petition "must be conducted in accordance with the Maine Rules of Civil Procedure, Rule 80C, except as modified by this section." 21-A M.R.S. § 905(2). In *Palesky v. Sec'y of State*, the Law Court held that "[t]he provisions of section 905 that could be deemed 'modifications' of Rule 80C relate to the expedited timing of the appeal." 1998 ME 103, ¶ 5, 711 A.2d 129. The *Palesky* court further concluded that 21-A M.R.S. § 905 does not require "a full de novo trial"; rather, the procedural framework for a Section 905 appeal is set forth in Rule 80C. *Id.* ¶¶ 5-6, 8.

Under Rule 80C, the court is not permitted to overturn an agency's decision "unless it: violates the Constitution or statutes; exceeds the agency's authority; is procedurally unlawful; is arbitrary or capricious; constitutes an abuse of discretion; is affected by bias or error of law; or is unsupported by the evidence in the record." *Kroger v. Dep't of Envtl. Prot.*, 2005 ME 50, ¶ 7, 870 A.2d 566; 5 M.R.S. § 11007(4). The party seeking to vacate a state agency decision has the burden of persuasion on appeal. *Anderson v. Me. Pub. Emp. Ret. Sys.*, 2009 ME 134, ¶ 3, 985 A.2d 501.

When reviewing agency decisions, the court must examine "'the entire record to determine whether, on the basis of all the testimony and exhibits before it, the agency could fairly and reasonably find the facts as it did.'" *Friends of Lincoln Lake v. Bd. of Envtl.*

4

*Prot.*, 2010 ME 18, ¶ 13, 989 A. 2d 1128. The court may not substitute its judgment for that of the agency on questions of fact. 5 M.R.S. § 11007(3). The issue is not whether the court would have reached the same result the agency did, but whether the "'record contains competent and substantial evidence that supports the result reached'" by the agency. *Seider v. Bd. of Examiners of Psychologists,* 2000 ME 206, ¶ 8, 762 A.2d 551.

To the extent this case requires statutory interpretation, the court "interpret[s] every statute de novo as a matter of law to give effect to the intent of the Legislature, first by examining its plain language." *Reed,* 2020 ME 57, ¶ 14, 232 A.3d 202 (quotation marks omitted). If the plain language is unambiguous, the court interprets the statute according to its unambiguous meaning. *Id.* "If, however, a statute is ambiguous—i.e., it is reasonably susceptible to different interpretations—[the court] defer[s] to the agency's reasonable construction when the agency is tasked with administering the statute and it falls within the agency's expertise." *Id.* (quotation marks omitted). As the Secretary is the constitutional officer with plenary power to determine the validity of petitions, the court will defer to the Secretary's "reasonable interpretation of [an] ambiguous statute[]." *Id.* ¶ 18.

## Discussion

On appeal, Petitioner points to various alleged deficiencies in the circulator affidavits and signatures submitted in support of the direct initiative petition at issue. Among his challenges, Petitioner argues that the Secretary validated certain circulator affidavits (along with the signatures associated with them) in violation of the of 21-A M.R.S. § 903-A(4). According to Petitioner, Section 903-A(4) creates a mandate that "explicitly" and "unambiguously" sets forth the requirements for circulator affidavits. Pet. Br. at 11-12.

At oral argument, Petitioner conceded that if the court disagrees with his contentions regarding the mandatory and unambiguous nature of Section 903-A(4), Petitioner will not have the signatures he needs to meaningfully influence the final signature tally and to obtain a reversal of the Secretary's determination of validity. The court's own calculations

5

confirm the same. As the issue is essentially outcome-determinative, the court first examines Petitioner's contention that the Secretary erroneously accepted circulator affidavits that did not comply with Section 903-A(4)'s requirements—specifically, the statutory requirement that the circulator affidavit include "the date the circulator signed the affidavit."

To support his argument in this regard, Petitioner points the court to the affidavits of circulators Tyler Dorn (291 signatures), Elliot Oullette (1 signature), Isaac Pierce (71 signatures), Joseph Winn (135 signatures), and Drew Collins (64 signatures). *See* Pet.'s Br. at 6. While these affidavits include a notarization date, the date next to the circulators' signature was either incomplete or omitted, as exemplified by the circulator affidavits reproduced below:

**State of Maine**
**Circulator Affidavit and Certificate of Registration**
*For Citizen's Initiative and People's Veto Petitions*

I, _Isaac Pierce_, currently reside at the following address:
Printed Name of Circulator

_10 Town Street_ _Boden, ME 04673_
Street Number and Name City, State and Zip Code

and being duly sworn, hereby affirm the following:

I have read and understand the information provided by the Secretary of State's Office to the applicant, pursuant to Title 21-A §903-A, sub-§3, including the laws and rules governing the circulation of petitions;

I understand that I can be prosecuted under Title 21-A §904 if I violate the laws governing the circulation of petitions, including the requirement that I execute this Circulator's Affidavit truthfully;

I understand that this Affidavit must be filed with the Secretary of State at the time the signed petitions are filed.

**RESIDENCY (check one box):**

☑ I was a resident of the State of Maine at all times when I circulated the petition.

☐ I was not a resident of the State of Maine during part or all of the time I circulated the petition, but I agree to submit myself to the jurisdiction of the State of Maine for any investigation and/or prosecution of alleged violations of Title 21-A of the Maine Revised Statutes.

**VOTER REGISTRATION (check one box):**

☐ I was registered to vote in the State of Maine at all times when I circulated the petition.
City/Town of Registration: _Boden_

☐ I was not registered to vote in the State of Maine during part or all of the time I circulated the petition.

Signature of Circulator: _____ Date: _12/21_

STATE of: _Maine_
COUNTY of: _Cumberland_ Date: _12/21/2021_

Personally appeared before me the above-named circulator and made oath that the foregoing statements made by him/her are true and correct to his/her own personal knowledge.

Signature of Notary Public: _____

Printed Name: _Christopher M. Cousins_

My Commission expires: _04/14/2028_ Commission number (if not Maine): _____

CHRISTOPHER M. COUSINS
Notary Public, State of Maine
My Commission Expires Apr. 14, 2028

According to Petitioner, the circulator affidavits should have been rejected by the Secretary for failure to comply with the unambiguous mandates of 21-A M.R.S. § 903-A(4). Resolution of this issue requires the court to interpret the language of Section 903-A(4). That provision states in relevant part:

> **4. Circulator affidavit.** A person who circulates a petition shall execute an affidavit that must *include*:
>
> **A.** The circulator's printed name, the physical address at which the circulator resides and the date the circulator signed the affidavit.

21-A M.R.S. § 903-A(4).

In the court's view, the requirements of Section 903-A(4) are not as explicit as Petitioner suggests. As counsel for the Secretary notes, the statute does not mandate a particular form for the affidavit, only what must be included. Indeed, the court finds ambiguity in the term "include," even though the terms "printed name," "physical address,"

7

and "date the circulator signed the affidavit" are clear. For example, "the date the circulator signed the affidavit" may be "included" in different ways. The date may be "included" in the portion of the affidavit that is completed by the circulator in his or her own hand. Or, it may be "included" in the notary block by the notary witnessing the signature. The plain language of the statute does not clearly establish who must date the affidavit or how or where the date must appear on the face of the affidavit. As such, the court finds that there is more than one reasonable interpretation of Section 903-A(4).[3]

As previously discussed, the court is bound to defer to the Secretary's reasonable interpretation of an ambiguous statute governing the citizen initiative process. *Reed,* 2020 ME 57, ¶ 18, 232 A.3d 202. The record reveals that the Secretary treated the notarization date—i.e., the date the notary witnessed the signature—as "the date circulator signed the affidavit." 21-A M.R.S. § 903-A(4)(A). Accordingly, she accepted circulator affidavits that contained a notarization date, even though the circulator otherwise left the date blank or incomplete.

The Secretary's interpretation was consistent with the language of Section 903-A(4). *See Reed,* 2020 ME 57, ¶ 19, 232 A.3d 202 (finding Secretary's statutory interpretation reasonable "because it [wa]s consistent with the[] language" of the statute). And importantly, the Secretary adopted an interpretation of the provision that furthered the fundamental right to legislate by direct initiative as well as the right to engage in core political speech. *McGee,* 2006 ME 50, ¶ 21, 896 A.2d 933; *Me. Taxpayers Action Network,*

---

[3] Petitioner suggests that the terms "shall" and "must" in Section 903-A(4) render the provision "mandatory" and preclude the use of the substantial compliance standard—a standard that is appropriate only when the provision at issue is "directory." *McGee,* 2006 ME 50, ¶ 13, 896 A.2d 933. This "mandatory-directory distinction" was explored in greater detail by the majority and concurrence in *McGee v. Sec'y of State. Id.* ¶¶ 13-17 & ¶¶ 55-59 (Clifford, J., concurring). The court, however, need not dwell on the "mandatory-directory distinction" here. Indeed, the court agrees that the statute is mandatory to the extent that it requires inclusion of the circulator's printed name, physical address, and date the circulator signed the affidavit. Though mandatory, Section 903-A(4)'s use of the word "include" renders the provision ambiguous, giving rise to more than one reasonable interpretation as to how the mandate may be satisfied. The proper focus, therefore, is on the reasonableness of the Secretary's interpretation of Section 903-A(4).

8

2002 ME 64, ¶ 8, 795 A.2d 75. Petitioner's contrary interpretation—that the date must be supplied by the circulator in the circulator's own hand—would require invalidation of citizens' signatures despite reliable evidence documenting the date the circulator signed the affidavit. Such an interpretation would create a hurdle not imposed by the plain language of Section 903-A(4) and unnecessarily frustrate the exercise of the important constitutional rights discussed above. Faced with an ambiguity in the terms of Section 903-A(4), it was eminently reasonable for the Secretary to resolve the ambiguity in a way that "facilitate[d], rather than handicap[ped], the people's exercise of their sovereign power to legislate." *Allen*, 459 A.2d at 1102-03.[4]

Thus, notwithstanding the missing and incomplete signature dates, the court concludes that the Secretary adhered to Section 903-A(4)(A) when she accepted the challenged circulator affidavits. As the court finds no error in the Secretary's validation of the signatures associated with these circulator affidavits, Petitioner lacks the signatures he needs to obtain a reversal of the Secretary's Determination or to otherwise justify a remand to the Secretary.

### Conclusion

The entry is: The Secretary of State's Determination of the Validity of the Petition for Initiated Legislation is AFFIRMED.

---

[4] Petitioner also suggests that the Secretary inconsistently and arbitrarily applied the requirements of Section 903-A(4). To support this contention, Petitioner notes that the Secretary rejected certain circulator affidavits on which the circulator failed to affix a signature. A circulator's failure to sign the affidavit is a serious and fundamental error that casts doubt on the reliability of the entire affidavit. Such an omission cannot be likened to the minor date discrepancies alleged here, particularly where the full date appeared in the notary block. As such, it was reasonable for the Secretary to accept the affidavits with the alleged "date errors" but reject the affidavits with omitted signatures. Petitioner has failed to satisfy his burden of demonstrating that the Secretary acted arbitrarily.

The Clerk is directed to incorporate this Order into the docket of this case by reference in accordance with M.R. Civ. P. 79(a).


Date: March 7, 2023

Michaela Murphy
Justice, Maine Superior Court