Dissenting Opinion by
POLLACK J.,
in which WILSON, J., joins.
This case concerns judicial review of a county ordinance enacted by Hawaii County *423 voters pursuant to the voter initiative process set forth in the Hawaii County Charter. The ordinance expressly provides that if any of its provisions conflict with state law, the conflicting provisions shall be deemed advisory or be severed, preserving the ordinance as an expression of the will of the people. By application of these corrective provisions to resolve any potential conflict, the ordinance is maintained as an expression of the voters’ view that the investigation and prosecution of certain minor cannabis offenses should be the lowest priority for local law enforcement and that scarce government resources should instead be allocated to “necessities such as education and health care.”
Accordingly, because the corrective provisions preserve the will of the voters and forestall any conflict between the ordinance and state law, I dissent from the majority’s invalidation of the ordinance in its entirety.
I. Background
a. The County’s Power to Enact Ordinances
The county’s delegation of authority from the state to “frame and adopt a charter for its own self-government” is expressly set forth in Article VIII of the Hawai'i Constitution which delineates, and limits, the grant of power from the state to its political subdivisions. Haw. Const, art. 8, § 2. Pursuant to the constitution, once adopted, charter provisions with respect to the county’s “executive, legislative and administrative structure and organization shall be superior to statutory provisions, subject to the authority of the legislature to enact general laws allocating and reallocating powers and functions.” Id.
In accordance with Article VIII of the Hawai'i Constitution, the state legislature enacted HRS § 46-1.5 to allocate general powers, subject to limitation, to the counties. See Richardson v. City & Cnty. of Honolulu, 76 Hawai'i 46, 59-60, 868 P.2d 1193, 1206-07 (1994) (discussing legislative evolution of HRS § 46-1.5). Among the powers granted to the counties by the legislature is the power “to enact ordinances deemed necessary to protect health, life, and property, and to preserve the order and security of the county and its inhabitants on any subject or matter not inconsistent with, or tending to defeat, the intent of any state statute where the statute does not disclose an express or implied intent that the statute shall be exclusive or uniform throughout the State.”[1] HRS § 46-1.5(13).
In each of the four counties within the State of Hawai'i, an ordinance may be enacted through two legislative processes: first, by the majority vote by the members of a County Council and second, as each county’s “legislative structure includes the people and their power to enact legislation through popular vote,”[2] by majority vote of the citizens of a county. Kaiser Hawai'i Kai Dev. Co. v. City & Cnty. of Honolulu, 70 Haw. 480, 496, 777 P.2d 244, 253 (1989). Accordingly, pursuant to HRS § 46-15(13), a county council or the citizens of a particular county through voter initiative may enact any ordinance believed to be necessary to protect health, life and property, and to preserve the order and security of the county, subject only to the condition that the subject ordinance is not preempted under the limitations set forth in HRS § 46-1.5(13) or HRS § 50-15 as applied through the Richardson test.[3]
*424 b. Lowest Law Enforcement Priority of Cannabis Ordinance
In November 2008, the citizens of Hawañ County exercised their right, pursuant to Article VI of the Hawañ County Charter, to enact county ordinances through voter initiative.[4] Among the initiatives passed by voters in Hawañ County during the 2008 election was an ordinance, entitled, “the Lowest Law Enforcement Priority of Cannabis Ordinance” (“LLEP” or “the Ordinance”),[5] that sought to achieve two primary objectives.[6]
First, the voters enacted the Ordinance to express their view that the investigation and prosecution of small quantities of cannabis used or possessed by adults within their private residences should be the lowest priority for law enforcement within Hawañ County.[7] LLEP §§ 14-98, -104. Rather than allocating and expending limited law enforcement and prosecutorial resources on the enforcement of offenses involving possession of cannabis by adults on private property, the voters conveyed their strong desire for those resources to be focused on more serious crimes, specifying for instance that “methamphetamine is a growing problem in our community.” LLEP §§ 14—96(1)—(3), -97(f), - 99, -103. The voters accordingly sought to inform their county government representatives that the voters believed “funding for necessities such as education and health care” to be a greater priority than proseeut-ing the type of cannabis offenses covered by the Ordinance.[8] LLEP § 1496(4).
In addition to serving as a clear expression of the will of the people, the Ordinance contains directive provisions that guide and constrain enforcement and prosecution of offenses falling under its purview.[9] LLEP §§ 14-99, -100, -101. For example, the LLEP places limitations on government entities as to funding, investigation, and prosecution of offenses covered by the Ordinance. LLEP §§ 14-99, -101. Additionally, the LLEP provides for specific action by county officials, including the publication of an annual report and the creation of procedures to enforce the Ordinance. LLEP §§ 14-102, - 103. Thus, the Ordinance has dual objectives-first, to express the will of the citizens of Hawañ County with regard to the prioritization of law enforcement and prosecutorial resources and, second, to effectuate the directive provisions.
Significantly, the voters approving the LLEP anticipated that certain, or even all, of the Ordinance’s mandatory provisions may be found to conflict with state law and therefore included corrective provisions to preserve a primary objective of the Ordinance. LLEP §§ 14-100 -104, -105. First, the Ordinance specifically provides that if a court were to find that a mandatory provision may not be directed by voter initiative, then that *425 directive provision is to be deemed advisory, and the provision is to remain as an “expression of the will of the people” that it be implemented into law by the government branch or official that has the power to do so. See LLEP § 14-104. Further, in the event that deeming a mandatory provision advisory does not resolve the conflict, the Ordinance provides that the specific conflicting LLEP provision shall be severed, so as to not affect the remainder of the Ordinance. See LLEP § 14-105. Finally, one of the Ordinance’s provisions governing the prosecution of offenses covered by the Ordinance is expressly qualified as a request and is self-limiting to apply only to the extent allowed by the Ha-wai'i Constitution. LLEP § 14-100.
Accordingly, in order to achieve the LLEP’s objectives, the voters intended for the Ordinance’s directive provisions to be carried out to the extent allowable under state law. In the event that a court determines that a mandatory provision of the LLEP may not be directed by voter initiative or by action of the council, the LLEP provides that the mandatory provision is to be construed as a non-binding advisory statement expressing the will of the people.
c. Legal Challenge
On March 24, 2011, approximately two and a half years after the LLEP was enacted by the voters, several pro se individuals (plaintiffs) jointly filed a complaint in the Circuit Court of the Third Circuit (circuit court) against numerous county officials, including members of the Hawai'i County Council, the Hawai'i County Prosecutor’s Office, and the Hawai'i County Chief of Police (collectively, “defendants”), alleging that the officials had “ignored the will of the people” by failing to abide by the LLEP. The plaintiffs alleged, inter alia, that county officials continued to prosecute cannabis cases inconsistent with the LLEP’s mandates and fund the prosecution and enforcement of offenses under the LLEP, “despite the people of Hawai'i County’s expressed intent that desperately needed funds be allotted to maintain and support vital educational, health and infrastructure problems and programs.” The plaintiffs sought injunctive relief in the form of a court order requiring county officials to abide by the Ordinance’s directives, as well as punitive damages and reasonable compensation for their efforts and expenses related to the case.[10]
The defendants subsequently moved for judgment on the pleadings, asserting that the Ordinance was void because it conflicted with state law. The defendants additionally argued that the plaintiffs lacked standing to bring a complaint and contended that the Ordinance does not create the right to bring a private cause of action for damages.
In response, the plaintiffs contended that the Ordinance does not prohibit or stop the prosecution or enforcement of criminal violations but, rather, directs the defendants to prioritize and utilize their time and resources on more important community issues. Thus, the plaintiffs maintained that the Ordinance does not conflict with state law. In the plaintiffs’ response to the defendants’ proposed findings of fact and conclusions of law, the plaintiffs argued the LLEP’s severability clause “guarantees that the spirit of the law remains” and that any conflicting provisions should be severed “rather than a broad ruling of unenforeeability.”
On November 15, 2011, the circuit court entered its Findings of Fact, Conclusions of Law and Decision and Order, which granted the defendant’s motion for judgment on the *426 pleadings. The court concluded that the entire Ordinance was preempted by state law and was thus unenforceable. The circuit court entered its Pinal Judgment on January 28, 2013 (judgment), which dismissed all of the claims in the plaintiffs’ complaint with prejudice.
The plaintiffs appealed the circuit court’s judgment to the Intermediate Court of Appeals (ICA). In their opening brief, the plaintiffs argued, inter alia, that the circuit court erred by “indiscriminately striking down the entirety of the” LLEP, thus, “quash[ing] the will of the people,” even when the Ordinance clearly establishes that its provisions are severable. In response, the defendants maintained that provisions of the Ordinance cannot be severed because the entirety of the LLEP is inconsistent with state law and thus the Ordinance is unconstitutional and void. In their reply brief, the plaintiffs quoted the LLEP’s advisory provision, § 14-104,[11] and argued that the circuit court “did not find” any of the provisions of the LLEP may not be directed by voter initiative or were invalid. The ICA affirmed the circuit court’s judgment, concluding that the Ordinance conflicted with, and was thus preempted by, state laws governing the investigation and prosecution of alleged violations of the Hawai'i Penal Code and the Uniform Controlled Substances Act. Ruggles v. Yagong, 132 Hawai'i 511, 323 P.3d 155 (App.2014).
The plaintiffs filed an application for writ of certiorari in which they presented the following question: “Did the [ICA] err in determining that the [LLEP], a voter sponsored initiative, in its entirety is in conflict with State laws, and is thus preempted by them?” The plaintiffs argue inter alia that the citizens who authored the LLEP “anticipated that certain provisions ... might be adjudicated invalid, and consequently included” two sections—an “advisory” section and a severability section—that direct the actions that should result in the event that a court finds any provision to conflict with state law.
II. Standards of Review
a.
An appellate court reviews a circuit court’s order granting a motion for judgment on the pleadings de novo. See Haw. Med. Ass’n v. Haw. Med. Serv. Ass’n, Inc., 113 Hawai'i 77, 91, 148 P.3d 1179, 1193 (2006).
b.
“The interpretation of a statute, ordinance or charter is a question of law reviewable de novo.” Korean Buddhist Dae Won Sa Temple v. Sullivan, 87 Hawai'i 217, 229, 953 P.2d 1315, 1327 (1998) (quoting State v. Arceo, 84 Hawai'i 1, 10, 928 P.2d 843, 852 (1996)) (alterations omitted). The fundamental starting point for statutory interpretation is the language of the statute itself, and “where the statutory language is plain and unambiguous, [the court’s] sole duty is to give effect to its plain and obvious meaning.” Haw. Gov’t Empls. Ass’n v. Lingle, 124 Hawai'i 197, 202, 239 P.3d 1, 6 (2010) (quoting Awakuni v. Awana, 115 Hawai'i 126, 133, 165 P.3d 1027, 1034 (2007)).
III. Discussion
a. Function and Legal Validity of Voter Initiatives
1. Direct Democracy and Voter Initiative
The power vested in the people to bring about legislation through the initiative and referendum process, known as “direct democracy,” “is so fundamental that it is described ‘not as a right granted the people, *427 but as a power reserved by them.’ ” Native Am. Sacred Site & Envtl. Prot. Ass’n v. City of San Juan Capistrano, 120 Cal.App.4th 961, 966, 16 Cal.Rptr.3d 146 (2004) (quoting Associated Home Builders etc., Inc. v. City of Livermore, 18 Cal.3d 582, 135 Cal.Rptr. 41, 557 P.2d 473 (1976) (en banc)); see also Town of Hilton Head Island v. Coal. of Expressway Opponents, 307 S.C. 449, 415 S.E.2d 801, 805 (1992) (noting that when the voters exercise their right to enact legislation through the initiative power in the county charter, they in effect act as a legislative branch of the county government).
The exercise of direct democracy through the initiative process is “one of the most precious rights of our democratic process.” Mervynne v. Acker, 189 Cal.App.2d 558, 563, 11 Cal.Rptr. 340 (1961). Compared with representative government, direct democracy is meant to fully and unreservedly implement the popular will. Owen Tipps, Separation of Powers and the California Initiative, 36 Golden Gate U.L.Rev. 185, 192 (2006). Indeed, although elected representatives often reflect the will of the electorate,
[c]ompared to direct democracy, the legislature seems far removed from majority preferences. When we vote for candidates it is often difficult to know exactly what we are saying. And even if representatives perfectly mirrored the people who voted for them, inequalities of representation and all sorts of institutional practices prevent accurate legislative expressions of popular will. When, on the other hand, we are asked to register our views on a single issue, the assertion that the result reflects the majority’s preference has great force.
Julian N. Eule, Judicial Review of Direct Democracy, 99 Yale L.J. 1503, 1514 (1990) (emphasis added); cf. City of Eastlake v. Forest City Enters., Inc., 426 U.S. 668, 678, 96 S.Ct. 2358, 49 L.Ed.2d 132 (1976) (“A referendum ... is far more than an expression of ambiguously founded neighborhood preferenee[;] [i]t is ... an exercise by the voters of their traditional right through direct legislation to override the views of their elected representatives as to what serves the public interest.” (quoting S. Alameda Spanish Speaking Org. v. Union City, 424 F.2d 291, 294 (9th Cir.1970)).
Consequently, when citizens mobilize to collect signatures in order to place an initiative on the ballot and thereafter enact the initiative by majority vote, no doubt remains as to what the majority of the citizens desire; the voice of the citizens is unequivocally stated through their exercise of direct democracy.
In addition to “facilitat[ing] the expressed will of the people and [ ] promoting] citizens’ rights and the democratic process,”[12] another “broad purpose of the [voter] initiative is the encouragement of participatory democracy” that provides the people with a practical opportunity to participate in the democratic process by acting on the public policy matters that directly affect them. Allen v. Quinn, 459 A.2d 1098, 1102 (Me.1983).
Indeed, direct democracy and the initiative process have had considerable influence on public policy, and they remain as one of the most precious rights of our democratic process.[13] In order to protect this fundamental democratic right, “courts are required to liberally construe [the initiative process] and accord it extraordinarily broad deference,” City of San Juan Capistrano, 120 Cal.App.4th at 966, 16 Cal.Rptr.3d 146 (citing Pala Band of Mission Indians v. Bd. of Supervisors, 54 Cal.App.4th 565, 573-74, 63 Cal.Rptr.2d 148 (1997)), for while “[j]udges apply the law[,] they do not sua sponte thwart -wills.” Coal. for Econ. Equity v. Wilson, 122 F.3d 692, 699 (9th Cir.1997).
*428 2. Advisory Initiatives
As stated, direct democracy serves several important functions including expressing the will of the people, furthering the democratic process, and providing citizens with the opportunity to directly enact legislation on important public issues. In facilitating these functions, a successful voter initiative may create new substantive law, modify existing law, or may serve as an “advisory initiative.” Although not as prevalent as voter initiatives that result in new substantive legislation or modify established law, advisory initiatives are enacted to express the will of the people without otherwise affecting law. See Neil K, Sawhney, Advisory Initiatives As A Cure for the Ills of Direct Democracy? A Case Study of Montana Initiative 166, 24 Stan. L. & Pol’y Rev. 589, 590 (2013). Consequently, advisory initiatives, in contrast to typical legislation, acquire no binding legal effect but merely allow “citizens and groups ... to place pressure on legislative bodies to take a certain course of action” by demonstrating, through ballot, their wishes. Joseph F. Zimmerman, The Referendum: People Decide Public Policy 13 (2001). Thus, advisory initiatives serve a distinct role in our democratic system, particularly when binding legislation may face constitutional, or other, challenges.
A recent example of a voter initiative illustrates the utility of advisory initiatives in situations where a binding law may be found to be unconstitutional or otherwise in conflict with state law. In 2012, Montana voters passed ballot initiative 166, the “Prohibition on Corporate Contributions and Expenditures in Montana Elections Act,” thereby establishing a state policy against corporate campaign donations. Sawhney, supra, at 590. The initiative additionally requested that the state congressional delegation work towards overturning Citizens United v. Federal Election Commission, 558 U.S. 310, 130 S.Ct. 876, 175 L.Ed.2d 753 (2010). Sawhney, supra, at 590. The drafters of the Montana ballot initiative realized a binding initiative that mandated action inconsistent with United States Supreme Court precedent would likely be found to be unconstitutional, and thus the initiative was drafted to set forth desired policy without mandating or prohibiting action. Although the initiative did not mandate or prohibit the legislature from acting, it nevertheless informed the legislature of the citizen’s desire for it “to work towards enacting the public’s ‘policy guidance.’ Id.
Accordingly, despite not having legal effect, advisory initiatives hold significant value; “[r]ather than usurping the role of the legislature, the advisory initiative in fact has the potential to ‘strengthen the legislative process’ by providing legislatures with greater information about the public’s policy preferences and ensuring action in accordance with those preferences.” Sawhney, supra, at 597 (quoting K.K. DuVivier, The United States as a Democratic Ideal? International Lessons in Referendum Democracy, 79 Temp. L.Rev. 821, 846 (2006)).
3. Judicial Review of Challenges to Voter Initiatives
Because of the valued role that voter initiatives hold in our democratic system, a court should cautiously act before frustrating the will of the people by invalidating a law passed by voter initiative. Indeed, voter initiatives “must be liberally construed to facilitate, rather than to handicap, the people’s exercise of them sovereign power to legislate.” Allen, 459 A.2d at 1102-03.
Consequently, to protect and preserve the will of the people, courts have applied the established principle that a court should “refrain from invalidating more of [a] statute than is necessary,” Alaska Airlines, Inc. v. Brock, 480 U.S. 678, 684, 107 S.Ct. 1476, 94 L.Ed.2d 661 (1987) (discussing federal preemption of state law), with even greater force to laws passed by voter initiative. Rossi v. Brown, 9 Cal.4th 688, 38 Cal.Rptr.2d 363, 889 P.2d 557, 571 (1995); see also, Damon v. Tsutsui 31 Haw. 678, 697 (Haw.Terr.1930) (“A part of a statute may be unconstitutional and at the same time the remainder may be upheld as constitutional.”); State ex rel. Anzai v. City & Cnty. of Honolulu, 99 Hawai'i 508, 515, 57 P.3d 433 (2002) (“[E]very enactment of the legislature is presumptively constitutional .... ”).
This high standard dictates that an initiative measure “must be upheld unless [its] *429 uneonstitutionality clearly, positively, and unmistakably appeal’s.” Rossi, 38 Cal.Rptr.2d 363, 889 P.2d at 571; see also Associated Home Builders etc., 135 Cal.Rptr. 41, 557 P.2d at 477 (“It has long been our judicial policy to apply a liberal construction to [the initiative] power wherever it is challenged in order that the right be not improperly annulled. If doubts can reasonably be resolved in favor of the use of this reserve power, courts will preserve it.” (quoting Mervynne, 189 Cal.App.2d 558, 11 Cal.Rptr. 340) (alteration omitted)).
b. Preemptive Challenge to the LLEP
The fundamental starting point for statutory interpretation is the language of the statute itself, and “where the statutory language is plain and unambiguous, [the court’s] sole duty is to give effect to its plain and obvious meaning.” Haw. Gov’t Empls. Ass’n, 124 Hawai'i at 202, 239 P.3d at 6 (quoting Awakuni, 115 Hawai'i at 133, 165 P.3d at 1034). Here, the language of the Ordinance is plainly and unambiguously stated, and the intent of the voters is clear—in the event conflict between the LLEP’s mandatory provisions and state law would otherwise occur, the court is to apply the Ordinance’s statutory construction provisions to resolve the conflict and thus to eliminate the need for preemption and the invalidation of the Ordinance. See LLEP §§ 14-104, -105.
This is not a situation where “severability questions are triggered by unplanned statutory failures” or where “the legislature has not thought of the particular situation which has come before the Court, and accordingly had no real intention as to how the law should be construed with respect to it.” Kevin C. Walsh, Partial Unconstitutionality, 85 N.Y.U. L.Rev. 738, 794 (2010) (quoting Emily L. Sherwin, Rules and Judicial Review, in 6 Legal Theory 299, 308 (2000), and Robert L. Stern, Separability and Separability Clauses in the Supreme Court, 51 Harv. L.Rev. 76, 98 (1937)). Rather, in anticipation of the precise situation before the court, the drafters expressly set forth in the Ordinance provisions to preclude conflict with state law in order to preserve a major objective of the Ordinance.
Specifically, the LLEP contains an “advisory” provision to forestall the implementation of its mandatory provisions that would otherwise conflict with state law. In addition, the Ordinance contains a severance provision with the same intended purpose of preventing conflict. Finally, the Ordinance provides that application of one of its sections is a “request” of the people to be carried out, but only to the extent allowed under the Hawaii Constitution. These corrective provisions will be further discussed to determine if they preclude a finding that the LLEP is preempted in this case.
1. Advisory
The first measure incorporated into the Ordinance to preclude conflict between its mandatory provisions and state law is an advisory provision. This provision provides that in the event that a court determines that any mandatory provision within the LLEP may not be directed by initiative or by action of the council, the mandatory provision is to be deemed advisory and remain as a nonbinding expression of the will of the voters. LLEP § 14-104.
Section 14-104, entitled “Statutory and constitutional interpretation” provides as follows:
All provisions in this article shall only be implemented to the full extent that the Constitution of the State of Hawai'i and the Hawafi Revised Statutes allows, and in the event, and only in the event, that a court of competent jurisdiction determines that any provision in any section of this article may not be directed by voter initiative or by action of the council, then that specific mandatory provision only shall be deemed advisory and expression of the will of the people that the provision shall be implemented into law by whichever government branch or official who has the power to implement it, and that the council shall take all actions within their power to work with those branches of government to express the will of the people and encourage, support, and request the implementation of those provisions.
LLEP § 14-104 (emphases added). By deeming the Ordinance’s mandatory provi *430 sions to be advisory when a conflict would otherwise exist between state law and the Ordinance, the Ordinance effectively becomes a nonbinding advisory initiative. Thus, although the LLEP was not enacted solely as an advisory initiative, in this capacity the LLEP achieves one of its principal objectives, that is, to “express[] the will of the people.” LLEP § 14-104.
When deemed advisory, the LLEP serves as a vehicle to enable the majority of Hawai'i County voters to convey to the County Council public opinion regarding the prioritization of cannabis enforcement within the county. Specifically, the LLEP serves as a public statement requesting that county officials re-prioritize their police activities, giving more weight to the enforcement of serious offenses, such as methamphetamine enforcement, as well as prioritizing funding of education and healthcare. LLEP §§ 14-96, - 97, -103. Deemed advisory, the LLEP reflects the expressed will of the citizens of Hawai'i County, providing the County Council with a clear indication of the preferences of its constituents. Sawhney, supra, at 597.
Through their participation in direct democracy and the enactment of advisory initiatives, voters send a clear message to their elected representatives as to what serves the public interest. City of Eastlake, 426 U.S. at 678, 96 S.Ct. 2358. As indicated in section 14-97(g) of the LLEP, citizens of numerous counties across the United States have adopted laws similar to the LLEP within the past five years. These statements from the public are important, as they may serve as precursors to changes in the law[14] and provide citizens with the opportunity to participate in the democratic process by enacting legislation affecting public policy matters that directly affect them. Allen, 459 A.2d at 1102. Additionally, such statements provide useful information for public officials as to public sentiment and allow police, prosecutors, and other agencies to set policy that may coincide with public preference.[15]
Accordingly, although certain of the LLEP’s mandatory provisions would otherwise conflict with the prosecution and investigation of crimes prescribed by Hawai'i state law, deeming the LLEP’s conflicting provisions as nonbinding advisory statements precludes any such conflict while preserving the will of the voters. Such advisory provisions do not mandate any particular action, nor bind the executive or legislative branches to act contrary to state law; thus, when “conflicting” provisions are deemed to be solely advisory, the LLEP is not preempted under the second prong of the Richardson test for the reason that the LLEP, as a nonbinding advisory law, does not conflict with state law.[16]
*431 Thus, by applying the Ordinance’s “advisory” provision and interpreting mandatory provisions as advisory statements in accordance to the LLEP’s clear mandate, any ostensible conflict between the LLEP and state law is resolved; pursuant to its express terms, the Ordinance’s mandatory provisions are to be deemed nonbinding advisory provisions, retained to express the voice of the citizens of Hawai'i County. Consequently, the Ordinance should not be invalidated, preempted, or severed. See Associated Home Builders etc., 135 Cal.Rptr. 41, 557 P.2d at 477; Miller v. Moore, 169 F.3d 1119, 1126 (8th Cir.1999) (a statement of “the official position of the citizens” “standing alone, is exactly the sort of advisory, nonbinding communication between the people and their representatives that is permissible, and we therefore conclude that it may remain in effect”); cf. Kimble v. Swackhamer, 439 U.S. 1385, 1388, 99 S.Ct. 51, 58 L.Ed.2d 225 (1978) (finding “no constitutional obstacle to a nonbinding, advisory referendum”).
Although the potential for conflict between the LLEP and state law is effectively eliminated when deeming all provisions of the Ordinance as advisory statements expressing the will of the people, the Ordinance contains two additional corrective provisions.
2. Severance
The Ordinance further addresses potential conflict between its provisions and state law by the inclusion of a section within the Ordinance that provides that any remaining provision that conflicts with state law may be severed from the Ordinance, leaving the remainder intact.
Section 14-105. Severability.
In the event, and only in the event, that a court of competent jurisdiction should find one or more of the sections, or parts of the sections of this article illegal, or any provision of this article or the application thereof to any person or circumstance is held invalid, the remainder of the article and the application of such provisions to other persons or circumstances shall not be affected thereby.
LLEP § 14-105 (emphasis added).
When a court determines that a provision of a law is unconstitutional, prior to invalidating the entirety of the law, the court must first start “with a presumption that the enactment is severable from the remainder of the section or act.” Hamad v. Gates, 732 F.3d 990, 1000-01 (9th Cir.2013) cert. denied, — U.S. -, 134 S.Ct. 2866, 189 L.Ed.2d 810 (2014). As a general rule, courts are to refrain from invalidating more of a statute than is necessary, because “[a] ruling of unconstitutionality frustrates the intent of the elected representatives of the people.” Ayotte v. Planned Parenthood of N. New England, 546 U.S. 320, 329, 126 S.Ct. 961, 163 L.Ed.2d 812 (2006).
The inclusion of a severability clause in the legislation “establishes a presumption in favor of severance,” and “[ajlthough not conclusive, a severability clause normally calls for sustaining the valid part of the enactment.” Cal. Redev. Ass’n v. Matosantos, 53 Cal.4th 231, 135 Cal.Rptr.3d 683, 267 P.3d 580, 607 (2011); Santa Barbara Sch. Dist. v. Superior Court, 13 Cal.3d 315, 118 Cal.Rptr. 637, 530 P.2d 605, 618 (1975). The inquiry of whether to sever “is eased when [the legislature] has explicitly provided for severance by including a severability clause in the [law],” which “creates a presumption that [the legislature] did not intend the validity of the [law] in question to depend on the validity of the constitutionally offensive provision.” Alaska Airlines, Inc., 480 U.S. at 686, 107 S.Ct. 1476. “In such a ease, unless there is strong evidence that [the legislature] intended otherwise, the objectionable provision can be excised from the remainder of the statute.” Id.; see also Miller, 169 F.3d at 1126 (severing part of a voter passed constitutional amendment that established “the official position of the citizens” from invalid portions of *432 the amendment, holding that section “standing alone, is exactly the sort of advisory, nonbinding communication between the people and them representatives that is permissible, and we therefore conclude that it may remain in effect”); Simpson v. Cenarrusa, 130 Idaho 609, 944 P.2d 1372, 1376-77 (1997) (holding that although part of a voter initiative was unconstitutional, the initiative’s nonbinding, advisory component was severable and could remain intact); cf. Kimble, 439 U.S. at 1388, 99 S.Ct. 51 (finding “no constitutional obstacle to a nonbinding, advisory referendum”).
As discussed in the preceding section, the Ordinance effectively precludes conflict between its mandatory provisions and state law by deeming the mandatory provision to be advisory. Retained as a nonbinding advisory law, the Ordinance effectively achieves one of the primary objectives of the law—to express the will of the citizens of Hawai'i County by providing government officials with an expressed statement of the people’s desired policy on a matter of significant public concern. Accordingly, after eliminating the conflict, the law “must be sustained.” Tsutsui, 31 Haw. at 697.
Although the potential for conflict between the LLEP and state law is effectively eliminated by deeming its mandatory provisions to be advisory statements that express the will of the people, the Ordinance additionally provides that a provision that is nevertheless in conflict may be severed, leaving the rest of the LLEP intact.
In other words, if any conflict exists between the LLEP and state law after deeming its provisions advisory, the voters who enacted the LLEP intended that the conflicting provision be severed from the rest of the LLEP without affecting the remaining provisions. Consequently, although potential conflict between the Ordinance and state law is eliminated by deeming the mandatory directory provisions to be “advisory,” the “sever-ability” provision provides an additional basis to resolve any conflict, thus, further precluding the conclusion that the entirety of the Ordinance is preempted and invalid.
3. “To the extent allowed”
While the preceding two sections of the LLEP address the potential for conflict between any of the Ordinance’s provisions and state law, the Ordinance additionally contains a provision in section 14-100, entitled “County prosecuting attorneys,” that prevents such conflict from occurring in the first instance. Section 14-100 provides the following:
Section 14-100. County prosecuting attorneys.
To the full extent allowed by the Constitution of the State of Hawai‘i, the people, through their county government, request that neither the county prosecuting attorney nor any attorney prosecuting on behalf of the county shall prosecute any violations of the sections of chapter 712-1240 of the Hawai'i Revised Statutes regarding possession or cultivation of cannabis in a manner inconsistent with the Lowest Law Enforcement Priority, as described in section 14-98 and 14-99 of this article; in cases where the amount possessed or grown is less than twenty four plants or the dried equivalent, possession for adult personal use shall be presumed.
LLEP § 14-100 (emphases added).
The drafters of the LLEP and the voters appear to have recognized that a provision that directly circumscribes the prosecutor’s ability to prosecute offenses under the Ordinance’s purview—i.e., possession and cultivation of up to twenty-four cannabis plants by adults aged twenty-one and older—may conflict with the state constitution. Accordingly, this provision was expressly drafted as a “request” of the people, to be implemented only to the extent allowable under the Hawaii Constitution. By the provision’s express terms, where the people’s request is not in accordance with the constitution, it is without legal effect. In expressly limiting the application of section 14-100 to the extent consistent with the state constitution, this section of the Ordinance effectively prevents any conflict between its provisions and the constitution. Additionally, because this provision does not mandate, nor prohibit, and instead only requests, it does not conflict with the constitution or state law, and thus the provision does not need to be rendered *433 advisory or severed. Thus, in addition to the “advisory” and “severance” provisions, section 14-100 also precludes the potential for confiict with state law.
IY. Preemption Improperly Invoked to Invalidate LLEP
The majority concludes the Ordinance is preempted under the second Richardson prong because the LLEP, even when deemed advisory, conflicts with state law governing the investigation and prosecution of alleged violations of the Hawai'i Penal Code. Majority at 426-27, 430, 353 P.3d at 968-69, 972. However, when deemed advisory, the LLEP does not require or prohibit action but merely serves as an expression of the people, and thus, the LLEP does not conflict with state law. Nevertheless, to the extent that any provision within the LLEP is found to conflict with state law, the Ordinance expressly provides that the conflicting provision shall be severed and that the rest of the LLEP shall remain in effect.
In Richardson, this court described the “general principles governing preemption” of local legislation as follows:
If otherwise valid local legislation conflicts with state law, it is preempted by such law and is void.
A conflict exists if the local legislation duplicates, contradicts, or enters an area fully occupied by general law, either expressly or by legislative implication.[17]
Local legislation is “duplicative” of general law when it is coextensive therewith.
Similarly, local legislation is “contradictory” to general law when it is inimical thereto....
Finally, local legislation enters an area that is “fully occupied” by general law when the Legislature has expressly manifested its intent to “fully occupy” the area, or when it has impliedly done so....
Richardson, 76 Hawai'i at 60-61, 868 P.2d at 1207-08 (quoting Sherwin-Williams Co. v. City of Los Angeles, 4 Cal.4th 893, 16 Cal.Rptr.2d 215, 844 P.2d 534 (Cal.1993)) (emphases in original). These principles were subsequently applied and further clarified by this court in Pacific International Services Corp. v. Hurip, 76 Hawai'i 209, 215, 873 P.2d 88, 94 (1994).
In Hurip, this court applied the principles elucidated in Sherwin-Williams within the Richardson preemption test to determine whether a county ordinance was preempted by state law.[18] In evaluating whether the ordinance conflicted with state law and was thus preempted under the second Richardson prong, this court noted that a conflict exists when an ordinance is inimical to a state law and explained that an “ordinance is ‘inimical to’ a state statute when it ‘prohibit[s] what the statute commands or command[s] what [the statute] prohibits.’” Id. at 215 n. 9, 873 P.2d at 94 n. 9 (quoting Sherwin-Williams, 4 Cal.4th at 902, 16 Cal.Rptr.2d 215, 844 P.2d 534); Waikiki Resort Hotel, Inc. v. City & Cnty. of Honolulu, 63 Haw. 222, 241, 624 P.2d 1353, 1366 (1981) (“A test to determine whether an ordinance conflicts with a statute is whether it prohibits what the statute permits or permits what the statute prohibits.”). In Hurip, the court concluded that the ordinance was “not ‘contradictory’ or ‘inimical’ to [state law] and therefore [was] not preempted on the basis that it is in conflict therewith.” See Hurip, 76 Hawai'i at 219, 873 P.2d at 98.
*434 Accordingly, under the “general principles of preemption” set forth in Sherwin-Williams and discussed by this court in Richardson and Hurip, a conflict between the LLEP and state law may occur if (1) the LLEP duplicates or is coextensive with state law or (2) the LLEP is mimical to state law because the Ordinance prohibits what a statute commands or commands what a statute prohibits.
Here, when deemed advisory, the LLEP’s provisions are not coextensive with the Ha-wai'i Penal Code or the Hawai'i Uniformed Controlled Substances Act. Whereas the Penal Code and Uniformed Controlled Substances Act establish criminal offenses, the LLEP does not establish offenses nor does it negate those prescribed by state law. Instead, the LLEP, deemed advisory, expresses the people’s desire on how their county government prioritizes the enforcement of a category of offenses established by state law. For these reasons, the LLEP’s provisions, when advisory, do not prohibit what the Ha-wai'i Penal Code or Uniformed Controlled Substance Act commands, nor commands what these state laws prohibit. Thus, because the Ordinance does not duplicate state law, nor is it inimical to state law, the LLEP is not preempted on the basis that it is in conflict with state law governing the investigation and prosecution of alleged offenses of the Hawai'i Penal Code and HRS Chapter 329. See Hurip, 76 Hawai'i at 219, 873 P.2d at 98.
Further, the “advisory” provision does not require the defendants to fix or correct the Ordinance, nor does the application of the “advisory” provision render the Ordinance’s provisions “enforceable.” Instead, as advisory statements, the Ordinance’s provisions are neither implemented nor acquire binding legal effect. Thus, the majority’s conclusion that the “advisory” provision may not be given effect because “no part [of the Ordi-nanee] is amenable to implementation by the Defendants” misapprehends the operation of the provision. Majority at-, 353 P.3d at 972. Giving effect to the advisory provision is not dependent upon whether the mandatory provisions of the Ordinance may be implemented, rather, it is because the mandatory provisions may not be implemented that the advisory provision of the LLEP is invoked and becomes operative. Accordingly, because the LLEP, when deemed advisory, is not coextensive or inimical to state law, the majority’s application of the preemption doctrine to invalidate the LLEP is incorrect.
Even assuming that a provision of the LLEP is found to conflict with state law after the advisory provision is given effect, the Ordinance expressly provides that the offending provision is to be severed from the LLEP. LLEP § 14-105. The inclusion of a severability clause establishes a presumption that “the objectionable provision can be excised from the remainder of the statute.” Alaska Airlines, Inc., 480 U.S. at 686, 107 S.Ct. 1476; see also Matosantos, 135 Cal.Rptr.3d 683, 267 P.3d at 607; Miller, 169 F.3d at 1126 (severing part of a voter passed constitutional amendment that established “the official position of the citizens” from invalid portions of the amendment, holding that section “standing alone, is exactly the sort of advisory, nonbinding communication between the people and their representatives that is permissible, and we therefore conclude that it may remain in effect”); Simpson v. Cenarrusa, 944 P.2d at 1376-77 (holding that although part of a voter initiative was unconstitutional, the initiative’s nonbinding, advisory component was severable and could remain intact). Accordingly, even assuming, as the majority concludes, that the advisory provision “is not merely advisory” because it contains mandatory language, majority at 430-31, 353 P.3d at 972-73, the offending clauses[19] may be severed without *435 affecting the remainder of the Ordinance. See LLEP § 14-105. Thus, the “mandatory” clauses within the advisory provision are sev-erable and thus may not serve as a basis to preempt and invalidate the entire Ordinance.
The majority additionally posits that the advisory provision contains language that “creates confusion regarding the duties of government officials.” Majority at 422, 353 P.3d at 964. Assuming arguendo, that the nonbinding advisory or severed provision creates confusion, it is nevertheless not a basis to preempt or invalidate a law under the Richardson analysis or by the application of principles of statutory construction. Rather, it is well established that when an ambiguity exists—i.e., when “there is doubt ... or uncertainty of an expression used in a statute”—the court examines the context of the ambiguity “in order to ascertain [its] true meaning.” Awakuni v. Awana, 115 Hawai'i 126, 133, 165 P.3d 1027, 1034 (2007). Accordingly, to the extent that the “mandatory5’ clauses in the advisory provision are “confusing,” the court’s role is to resolve the ambiguity by examining the context in which the ambiguity is found to ascertain its meaning. See Awakuni, 115 Hawai'i at 133, 165 P.3d at 1034. Consequently, any potential confusion in a provision of the LLEP should be resolved by this court’s interpretation of the ambiguous clauses. Here, even assuming the clause's in the advisory provision are ambiguous as contended by the majority, the ambiguity would be eliminated by severing the clauses from the Ordinance, and not by invalidating the entirety of the LLEP.
The majority also concludes that the “overarching mandate is the decriminalization of the adult personal use of marijuana.” Majority at 428, 429-30, 353 P.3d at 970, 971-72. However, the majority’s characterization of the Ordinance as having an “overarching mandate” to “decriminalize[e] [] the adult personal use of marijuana” misapprehends the plain language of the LLEP, which manifests the dual purposes of the Ordinance. Specifically, as discussed supra, a primary objective of the Ordinance is to serve as an advisory statement expressing the will of the people that its provisions be implemented by the government branch that may have the power to do so. The LLEP therefore, does not have a single overarching mandate and, instead, the Ordinance, by its own prescribed terms, serves to express the will of the citizens of Hawaii County that their government prioritize and allocate its limited resources on serious crimes and other public needs, including education and health care.
V. Conclusion
A court should act cautiously when reviewing a facial constitutional challenge. See Wilson, 122 F.3d at 699. To protect the will of the people, voter initiatives “must be liberally construed to facilitate, rather than to handicap, the people’s exercise of their sovereign power to legislate.” Allen, 459 A.2d at 1102-03. Thus, a court should “refrain from invalidating more of [a] statute than is necessary.” Alaska Airlines, Inc., 480 U.S. at 684, 107 S.Ct. 1476. This is especially true when the law not only has a severability clause but also expressly provides that any mandatory provisions contrary to law are to be deemed as advisory.
Here, because application of the Ordinance’s corrective provisions resolve the eon- *436 flict between state law and the Ordinance, the Ordinance should be upheld. See Rossi, 38 Cal.Rptr.2d 363, 889 P.2d at 571 (the law “must be upheld unless [its] unconstitutionality clearly, positively, and unmistakably appears”); see also Associated Home Builders etc., 135 Cal.Rptr. 41, 557 P.2d at 477 (“It has long been our judicial policy to apply a liberal construction to [the initiative] power wherever it is challenged in order that the right be not improperly annulled. If doubts can reasonably be resolved in favor of the use of this reserve power, courts will preserve it.” (quoting Mervynne, 189 Cal.App.2d 558, 11 Cal.Rptr. 340) (alteration omitted)).
Specifically, through the application of the Ordinance’s “advisory” provision, the LLEP’s mandatory provisions no longer conflict with state law governing the investigation and prosecution of offenses set forth in the Hawai'i Penal Code and the Uniform Controlled Substances Act. Indeed, it would be difficult to conceive of a situation where an initiative deemed to be solely advisory would be found to conflict with state law, as by them very nature, advisory initiatives require no action. Sawhney, supra, at 592. Moreover, the Ordinance expressly provides that any remaining provision that conflicts with state law may be severed from the Ordinance, leaving the remainder intact.
When the LLEP’s provisions are deemed to be nonbinding advisory statements expressing the will of the people, they do not impose binding duties or obligations upon any parties but, rather, serve as broad policy statements. As a result, the LLEP remains as an express statement of the people’s will that clearly reflects their preference on a single issue, and thus the LLEP retains an important utilitarian purpose. Accordingly, although certain provisions of the LLEP ostensibly conflict with state and county law, invalidation is neither proper nor necessary where the Ordinance specifically provides corrective measures that preserve one of the LLEP’s primary objectives—expressing the will of the people.
Accordingly, I conclude that all mandatory provisions that would otherwise conflict with state law should be construed to be advisory.[20] To the extent that the majority concludes that any non-advisory clause conflicts with state law, the majority should sever the offending clause, rather than invalidate the entirety of the LLEP.[21] Thus, I would affirm the ICA’s judgment on appeal, which affirmed the circuit court’s judgment, but for the reasons stated herein.[22]

. This court, in Richardson, set forth a two-part test, discussed infra, to determine whether an ordinance meets the limitations on the power to enact ordinances enumerated in HRS § 46-1.5(13).

. Each county within the State of Hawai'i has adopted a charter—“the organic law of the county”—providing its citizens with the power to enact ordinances through voter initiative. See Maui Counly Charter, Article 11; Kauai County Charter, Article 23; Revised Charter of Honolulu, Article 3, Chapter 4; and Hawai'i County Charter, Article 6.

.In addition to limitations on the power to enact ordinances under HRS § 46-1.5(13), HRS § 50-15 bars charter provisions or ordinances that conflict with state law on matters of statewide concern and interest. Such conflict is effectively addressed by and subsumed under the second prong of the Richardson preemption test, which provides that an ordinance may be preempted if it conflicts with state law. See Richardson, 76 Hawai'i at 62, 66, 868 P.2d at 1209, 1213. Thus, because HRS § 50-15 is not a discrete basis for invaliding the LLEP, it need not be addressed independently from the Richardson analysis. See id.

. Among the powers enumerated in the charter is the power vested in the citizens of the county to enact ordinances through voter initiative and referendum. Hawai'i County Charter, Article VI (2010). The Hawaii County Charter generally provides that "no enumeration of powers in [the] charter shall be deemed exclusive or restrictive.” Hawaii County Charter Article II, Section 2-1. Although the people may enact ordinances through voter initiative, the County Council retains the power to amend or repeal a voter initiative by a two-thirds majority vote. Hawaii County Charter, Article XI, Section 1 l-7(d).

. The Ordinance, No. 08-181, was subsequently codified as Article 16, Chapter 14 of the Hawaii County Code.

. As discussed infra, the voters enacted the LLEP to, inter alia, provide law enforcement more tíme and resources to focus on serious crimes, allow the court systems to run more efficiently, and provide more funding for education and health care. LLEP § 14-98.

. The Ordinance applies only to possession or cultivation of up to twenty-four cannabis plants, or the dried equivalent of up to twenty-four plants, for adult personal use, i.e., "the use of cannabis on private property by” individuals twenty-one years of age or older. LLEP § 14-98.

. The Ordinance specifically excludes distribution or sale of cannabis; any use, sale, or distribution on public property; driving under the influence; and "the commercial trafficking of cannabis, or the possession of amounts of cannabis in excess of the amounts defined as being appropriate for adult personal use.” LLEP § 14-98.

. LLEP provisions that direct or mandate action are referred to-herein as "directive” or "manda-toiy” provisions.

. Specifically, the plaintiffs requested the following injunctive relief: (1) the police and prosecutors be ordered to immediately cease and desist investigations, arrests, or prosecutions of any person, or the search and seizure of any property, in a manner inconsistent with the LLEP; (2) the Hawai'i County Council be ordered to establish procedures for receiving grievances under Section 14-102(1); (3) the Hawai'i County Council be ordered to publish semi-annual reports; (4) county officials be ordered to comply with the LLEP; (5) the Hawai'i County Council be required to cease authorizing or accepting funds for the purposes of investigating, citing, arresting, prosecuting, searching or seizing property, etc., related to cannabis-associated offenses as outlined in the LLEP, and that all funds allotted to police and prosecutors be withheld until it could be determined how much money had been spent presumably in violation of the LLEP; and (6) the Hawai'i County Council be ordered to hold the Hawai'i County Chief of Police accountable for upholding his oath of office, or else remove the Chief of Police from office.

. LLEP§ 14-104 provides as follows:
All provisions in this article shall only be implemented to the full extent that the Constitution of the State of Hawai'i and the Hawai'i Revised Statutes allows, and in the event, and only in the event, that a court of competent jurisdiction determines that any provision in any section of this article may not be directed by voter initiative or by action of the council, then that specific mandatory provision only shall be deemed advisory and expression of the will of the people that the provision shall be implemented into law by whichever government branch or official who has the power to implement it, and that the council shall take all actions within their power to work with those branches of government to express the will of the people and encourage, support, and request the implementation of those provisions.
LLEP § 14-104.

. K.K. DuVivier, State Ballot Initiatives in the Federal Preemption Equation: A Medical Marijuana Case Study, 40 Wake Forest L.Rev. 221, 269 (2001).

. "Initiatives on various public policy issues have brought about fundamental changes in the United States, including, but not limited to: women gaining the right to vote; politicians elected through direct primaries; ... creation of the eight-hour workday; legalization of physician-assisted suicide; placement of term limits on elected officials; adoption and abolishment of prohibition; abolishment of poll taxes; ... and adoption of campaign finance reform." K.K. DuVivier, State Ballot Initiatives, supra, at 294.

. The following cities all have LLP statutes in relation to cannabis: Hailey, Idaho; Denver, Colorado; Seattle, Washington; Columbia, Missouri; Eureka Springs, Arkansas; and Santa Barbara, Oakland, Santa Monica and Santa Cruz, California. In the years since their enactment, both Colorado and Washington have enacted statewide laws decriminalizing recreational use of cannabis.

. Although "[t]he Attorney General is the chief legal officer for the State of Hawai'i and has the ultimate responsibility for enforcing penal laws of statewide application,” the "Attorney General [] has delegated to the county prosecutors the primary authority and responsibility for initiating and conducting criminal prosecutions within their respective jurisdictions." Marsland v. First Hawaiian Bank, 70 Haw. 126, 130, 764 P.2d 1228, 1230-31 (1988) (citing Amemiya v. Sapienza, 63 Haw. 424, 427, 629 P.2d 1126, 1129 (1981)).
In exercising its delegated power, the county prosecutor has discretion to set policy and establish procedures necessary to carry out the duties of the office. For instance, the county prosecutor may create " 'general policies' for determining when to charge a defendant,” including "policies for the initiation of felony prosecutions, ... [and] the creation of a screening process [ ] used to decide whom to prosecute.” Christie v. Iopa, 176 F.3d 1231, 1238 (9th Cir.1999).

.In Richardson, this court set forth a two-prong test for determining whether a county ordinance may be preempted by state general laws. 76 Hawai'i at 62, 868 P.2d at 1209. Under the first Richardson prong, "a municipal ordinance may be preempted pursuant to HRS § 46-1.5(13) if [] it covers the same subject matter embraced within a comprehensive state statutory scheme disclosing an express or implied intent to be exclusive and uniform throughout the state.” Id. Under the second Richardson prong, a municipal ordinance may be preempted if "it conflicts with state law.” Id. The ICA concluded that the LLEP was preempted under both prongs of the Richardson test, while the majority concludes that the LLEP is preempted *431 only under the second Richardson prong. Thus, the majority overruled the ICA’s conclusion that the Hawai'i Uniformed Controlled Substances Act is a comprehensive statutory scheme disclosing an express or implied intent to be exclusive and uniform throughout the state and thus preempts the LLEP under the first Richardson prong. Majority at 428, 353 P.3d at 970. Although I agree that the ICA misapplied the Richardson test, the test should not have been applied in the first instance as the corrective provisions eliminate the ostensible conflict.

. In this jurisdiction, an ordinance that "enters an area fully occupied by general law” may be preempted under the first prong of the Richardson test, which applies if an ordinance "covers the same subject matter embraced within a comprehensive state statutory scheme disclosing an express or implied intent to be exclusive and uniform throughout the state.” Richardson, 76 Hawai'i at 62, 868 P.2d at 1209.

. In Hurip, this court evaluated whether a Honolulu Revised ordinance was preempted by state law under the Richardson two-prong preemption test. Id. at 215, 873 P.2d at 94. The court first concluded that although the state law at issue was intended to be "uniform," it was not intended to be "exclusive" throughout the state, and thus it did not "fully occupy” the pertinent area of law. Id. at 216, 873 P.2d at 95. Consequently, the court concluded that the ordinance was not preempted under the first prong of the Richardson test. Id. at 218, 873 P.2d at 97.

. The majority concludes that the advisory provision is "not merely advisory” because the provision states "that the provision shall be implemented into law by whichever government branch has the power to implement it" and that "the council shall take all actions within their power to work with those branches of government to express the will of the people and encourage, support, and request the implementation of those provisions.” Majority at 430-31, 353 P.3d at 972-73. However, the grammatical structure of the provision indicates that neither clause is mandatory:
All provisions in this article shall only be implemented to the full extent that the Constitution of the State of Hawai'i and the Hawai'i Revised Statutes allows, and in the event, and *435 only in the event, that a court of competent jurisdiction determines that any provision in any section of this article may not be directed by voter initiative or by action of the council, then
that specific mandatory provision only shall be deemed advisory and expression of the will of the people
that the provision shall be implemented into law by whichever government branch or official who has the power to implement it, and
that the council shall take all actions within their power to work with those branches of government to express the will of the people and encourage, support, and request the implementation of those provisions.
LLEP § 14-104 (emphases added and formatting modified). Thus, it is clear that the first clause— i.e., "that the provision shall be implemented into law”—is not mandatory, but rather is an "expression of the will of the people that” the mandatory provision^) that was deemed advisory be implemented by the government branch that has the power to do so. Similarly, the second clause should be read as an "expression of the will of the people” that the council take all actions within their power to work with and support those branches who have the power to implement the advisory provisions.

.The following provisions that would otherwise conflict with state law should be deemed advisory nonbinding statements expressing the will of the voters: Section 14-99, "Lowest law enforcement priority policy relating to the adult personal use of cannabis"; Section 14-101, "Expenditure of funds for cannabis enforcement”; Section 14-102, "Community oversight”; and, Section 14-103, "Notification of local, state, and federal officials."
It should be additionally noted that the following sections do not contain mandatory directives, and thus do not need to be deemed advisory: Section 14-96, "Purpose”; Section 14-97, "Findings”; Section 14-98, "Definitions”; Section 14-100, "County prosecuting attorneys”; and, Section 14-105, "Severability.” See, e.g., Poe v. Hawai'i Labor Relations Bd., 97 Hawai'i 528, 540-41, 40 P.3d 930, 943-43 (2002)(state-ments within a statute's “Statement of findings and policy” section "do not impose binding duties”; they nevertheless "provide a useful guide for determining legislative intent and purpose”).

. If the two clauses in Section 14-104, "Statutory and constitutional interpretation,” contended by the majority to be mandatory or ambiguous are severed from the rest of the advisory provision, Section 14-104 would read as follows:
All provisions in this article shall only be implemented to the full extent that the Constitution of the State of Hawai'i and the Hawai'i Revised Statutes allows, and in the event, and only in the event, that a court of competent jurisdiction determines that any provision in any section of this article may not be directed by voter initiative or by action of the council, then that specific mandatory provision only shall be deemed advisory and expression of the will of the people.

. Because the LLEP mandatory provisions should be deemed advisory or severed, plaintiffs’ claims for injunctive relief for punitive damages and for reasonable compensation would have no legal basis because the advisory or severed provisions would require no action by the defendants.